Carl Dee GORDON et ux *v.*
Barbara R. WELLMAN

79-140                    582 S.W. 2d 22

Opinion delivered June 11, 1979
(Division II)

*Charles Mott, Jr.* and *J. Fred Jones,* for appellants.

*Gannaway, Darrow & Hanshaw,* by: *Lance L. Hanshaw,* for appellee.

JOHN A. FOGLEMAN, Justice. It is with some reluctance that we find it necessary to reverse the decree in favor of appellee and dismiss this action she brought for partition, based on her claim to a 1/3 interest in a tract of land which was owned by her former father-in-law, C. A. Wellman, who died testate in 1941. Under the terms of his will, the tract, consisting of 5.23 acres, descended to his three children — his son, Harry, and his daughters, Helen and Carmelita (Novara) — as tenants in common. Helen, a registered nurse, had lived with and cared for her father during the last year of his life. He had lived in a house on the property. She continued to live in the house situated on that tract until her death in June, 1975. There was evidence tending to show that she had made improvements on the property and had paid the taxes on it. In 1950, Helen caused quitclaim deeds to be prepared and sent to her brother and sister for signature. The deeds were executed by them and returned to her, and both of them were filed for record on February 27, 1951. Appellee,

Barbara Wellman, was then the wife of Harry Wellman, having been married to him for over 20 years. Barbara did not sign that deed or relinquish her dower right in the property. It was executed by Harry on November 20, 1950. These deeds to Helen contained an error in the description of the land. Only the beginning point of a purported metes and bounds description was correct. The major error in the description was the omission of the first course and distance from what would have been a correct description. As a result, the courses described do not close and these deeds were obviously void for indefiniteness. *Bailey* v. *Martin,* 218 Ark. 513, 237 S.W. 2d 16.

Harry and Barbara were divorced by decree entered October 6, 1952. Barbara was represented by attorney Ward Martin and Harry by E. H. Bostic. A settlement in lieu of alimony was reached and Martin prepared two warranty deeds which Harry executed on that date, to carry the agreement into effect. One of them was a conveyance of Harry's undivided 1/3 interest in the 5.23 acre tract to Barbara. The tract was correctly described in that deed. The deeds were recorded on the day the decree was entered and Harry was married to someone else on that same date. The decree recited that the deeds were given in lieu of alimony.

In May, 1953, Harry and Carmelita again executed quitclaim deeds to Helen. These deeds correctly described the property and contained a recitation that they were correction deeds. The deed drafted for execution by Harry was drawn for execution by the husband and wife as grantors and contained a clause for relinquishment of dower. Barbara did not sign this deed, and, if Harry's wife to whom he was then married signed it, that fact is not disclosed by the record.

On July 28, 1953, Helen secured a $2,000 loan by executing a mortgage on the property to National Equity Life Insurance Company. There is testimony indicating that this loan was for improving the property. She continued in possession of the property until she sold all of it, except the house and the small lot on which it sat, to appellants, Carl Dee and Mary Frances Gordon, husband and wife, by warranty deed dated July 21, 1958. The part retained by Helen passed by will to her sister Carmelita and Carmelita's husband. When

the sale was made to the Gordons, the title was approved by their attorney who examined an abstract which erroneously showed that appellee had executed the correction deed with Harry and had thereby relinquished her dower. The Gordons took possession of the tract and commenced placing dirt on it.

This suit for partition was filed on September 9, 1958, by Ward Martin, as attorney for Barbara Wellman. Helen Wellman and the Gordons were defendants. The petition contained allegations that Barbara owned an undivided 1/3 interest in the 5.23 acre tract, that Helen and the Gordons owned an undivided 2/3 interest, and that Helen had been in possession since October 6, 1952. The prayer was that the property be sold and the proceeds divided, and that Barbara have judgment against Helen for $1,000, as one-third the rental value of the property. Helen Wellman filed an answer through her attorney O. D. Longstreth. This answer included a general denial and pleas of laches, adverse possession, and the statute of limitations specifically relating to the bar of a dower interest. The Gordons, through their attorney Shelby Blackmon, answered by general denial, but did not plead the other defenses set out in Helen's answer. They also cross-complained against Helen Wellman on her warranty of title and requested that the abstract company be made a party defendant.

After some sort of hearing before Chancellor Williams, of which no record was ever made, the litigation remained in virtual hibernation until August 31, 1971, when the Gordons filed a motion to dismiss for want of prosecution. Barbara's attorney, Ward Martin, filed a response asserting that the case had been partially tried before Chancellor Williams, that certain matters were then left to be resolved, that the Chancellor had died before the case could be concluded and that Barbara had at all times been willing to close the matter, but not on the terms of the defendants. Appellee asked that the case be set for trial on December 13, 1971. It seems that a hearing on the motion had been set for some unspecified date, but according to the testimony of Blackmon, Martin caused the case to be taken off the docket, for reasons undisclosed, and it returned to a state of dormancy until March 9, 1976, when Martin was permitted to withdraw and appellee's pres-

ent attorneys were substituted. The motion to dismiss was heard and denied on April 8, 1977.

The cause of action against Helen Wellman was not revived within one year after her death, or at any time prior to trial on August 12, 1977. Appellee's present counsel appeared and announced that he was ready for trial after the motion to dismiss was denied on April 8, 1977. Appellants never amended their pleading first filed to plead adverse possession, laches, or the statute of limitations, prior to the actual trial.

We consider only one point for reversal, insofar as the disposition of this appeal is concerned. Appellants assert that appellee is barred by laches in the prosecution of her claim. Appellants admit that they have been unable to find any Arkansas case applying the bar of laches to the prosecution of a claim after suit has been filed. They rely upon the general principles of the doctrine and the decisions of other jurisdictions. We are not aware of any such decision by this court.

Of course, the court in which an action is pending is authorized by Ark. Stat. Ann. § 27-1405 (Repl. 1962) to dismiss a case, without prejudice to a future action, on motion of a defendant, where there are others whom the plaintiff fails to prosecute with diligence, where the plaintiff fails to appear for trial, or where the plaintiff has disobeyed an order concerning the proceedings in the action. None of these grounds has been clearly shown to exist, although appellants filed a motion to dismiss, as previously mentioned, and made some effort to obtain a dismissal by such a motion. In that motion, appellants alleged that, since the cause had remained dormant since they filed their answer and cross-complaint on September 26, 1958, without any further pleading or court order of record, it was subject to dismissal under § 27-1405 and Rule 10, Uniform Rules for Circuit and Chancery Courts. At a pretrial hearing on April 8, 1977, this motion was renewed. At that time, Blackmon, representing appellants, stated that an order of the court had not been carried out and that appellants had made efforts to have the case brought to a conclusion to the extent of writing letters to Chancellor Williams. He pointed out that in the response to the motion, appellee had asked that the case be set for trial on December 13, 1971. Blackmon stated that he appeared in

court on that date, but that appellee, the plaintiff, did not appear. Nothing seems to have been done at that hearing, but Blackmon pointed out that the court file contained a copy of a letter he had written in 1962 to Martin in an effort to conclude the matter. The copy had been sent to Chancellor Williams, according to Blackmon. The letter related that the case had been partially tried and that the abstract company had agreed to pay for the amount of the dower interest awarded to Barbara. In the letter, Blackmon had stated his intention to apply to the court for dismissal on a certain date. The record is devoid of any evidence of any action on that date or at any time prior to March 9, 1976, when the chancery court permitted Ward Martin to withdraw and present counsel for appellee to be substituted.

We can well understand why the trial court did not grant the motion filed on the grounds stated in it. Both the statute and the rule relied upon provide only for a dismissal without prejudice. This would permit an immediate refiling. There is every reason to believe that the case would have been refiled, because it is clear from this record that appellee's present counsel have pursued the matter aggressively and acted with reasonable diligence in bringing the matter to trial, particularly when we view the confusion that has resulted from the long delay after the hearing before Chancellor Williams.

Even though neither the statute nor the rule made the dismissal mandatory and neither would have terminated this fusty litigation, the power and duty of the court to dispose of such cases is not limited to, or by, the statute, much less the court rule, where there has been a lack of diligence on the part of a plaintiff. We recognized in *Thompson* v. *Foote,* 199 Ark. 474, 134 S.W. 2d 11, the inherent power of courts, independent of statute or rule, to dismiss a case because of failure to prosecute with due diligence. See also, *Chandler* v. *Furlow,* 209 Ark. 852, 192 S.W. 2d 764; *Cowan* v. *Patrick,* 247 Ark. 886, 448 S.W. 2d 336; *Otwell* v. *Bolen,* 261 Ark. 1, 545 S.W. 2d 634; *Chalkley* v. *Henley,* 178 Ark. 635, 12 S.W. 2d 18. In *Thompson,* we held that an order of dismissal by the trial court would not be reversed on appeal in the absence of a manifest abuse of discretion. The same rule should apply

where a motion for dismissal is denied. That it will, may at least be inferred from *Chalkley* v. *Henley,* supra.

On the motion presented to the chancellor and the showing made in its support, we could not say that the court's discretion was manifestly abused by denial of the motion. But the matter did not end there. Contrary to appellee's assertion, appellants did raise the question of laches in the trial court, even though a pleading raising that defense was never filed by them. In the opening statement, appellants' present counsel stated that they were alleging laches and adverse possession, in addition to res judicata. He specifically stated that appellants contended that the case should have been dismissed for want of prosecution on account of laches and pointed out that Helen Wellman was dead and that the Gordons had made improvements on the property. Appellee made no objection to appellants' raising these issues and did not claim surprise, even though her attorney had objected to the injection of res judicata into the case. Evidence was directed to the issue of laches in the trial. There is no indication that the trial court declined to permit the issue of laches to be raised. We find no objection during the trial to the evidence in support of the question of laches in prosecution of the suit. Objections were made and sustained on evidence in support of the plea of res judicata. Under these circumstances, we find that the issue was raised in the trial court. Ark. Stat. Ann. § 27-1160 (Supp. 1977); *Parker* v. *Jones,* 221 Ark. 378, 253 S.W. 2d 342; *Nance* v. *Eiland,* 213 Ark. 1019, 214 S.W. 2d 217. See also, *Sarber* v. *McConnell,* 64 Ark. 450, 43 S.W. 395; *Old American Life Ins. Co.* v. *Harvey,* 242 Ark. 720, 415 S.W. 2d 66.

As appellants point out, there is textbook authority, amply supported by cited cases, for application of the doctrine of laches where a plaintiff fails to prosecute his suit diligently, just as it may be applied where no suit has been begun. 30A CJS 44, Equity, § 115; Annot, 43 ALR 921, 923. It seems that the application of the doctrine of laches to a pending action where the plaintiff fails to prosecute it with diligence has wide support. Appellants appropriately place considerable reliance upon *State* v. *District Court, Lewis & Clark County,* 132 Mont. 377, 319 P. 2d 957 (1957), cert. den. 356 U.S. 931, 78 S. Ct. 773, 2 L. Ed. 2d 761 (1958). That court said:

It has long been recognized that the courts have authority to dismiss an action for lack of diligence in its prosecution. *** This is the rule throughout the country. *** [Citations omitted.]

Here the motion of Sanborn to set aside the order of Judge Horsky was not brought on for hearing until after the lapse of more than twelve years after it was filed. Courts have held a plaintiff guilty of laches in failing to prosecute his action with reasonable diligence on much shorter delay than that here. *** [Citations omitted.]

It is contended that if Sanborn was guilty of laches so was Johnstone. This contention is without merit for the courts hold that while defendant has the right to call a motion of plaintiff on for hearing it is not his obligation to do so, but the obligation to prosecute the action with diligence rests with the plaintiff. ***

\*\*\*\*\*

The matter may not be permitted to slumber for more than twelve years during which time Johnstone occupied the premises and during which time the claim for rentals multiplied.

We realize that ordinarily whether an action should be dismissed for want of diligence in its prosecution is a question that rests in the discretion of the court. However, here there were no facts asserted that tend in any way to furnish an excuse for the delay and hence there was nothing to move the discretion of the court. True the motion was filed in June, 1944, and Sanborn asserts that he made frequent demand upon Johnstone for possession of the land, but this does not show an excuse for not bringing the motion on for hearing.

For the unconscionable delay by plaintiff Sanborn in bringing his motion on for hearing for more than twelve years after it was filed, it must be held that he is, and has been, guilty of such laches as to bar relief and the court was in error in not sustaining Johnstone's mo-

tion to dismiss the action. It should have granted the motion with prejudice.

The Supreme Court of Alabama pointed out in *Creel* v. *Baggett Transportation Co., Inc.,* 284 Ala. 47, 221 So. 2d 683 (1969), that it always has been the practice of courts of equity to remain inactive where the party seeking relief has been guilty of unreasonable laches in making his application and that the doctrine applies with the same consequences where the person seeking relief fails in the prosecution of the suit as fully as it does when he delays the bringing of suit. In that case, the delay of eleven years was held to be unjustified on the basis of the excuse offered for it. The result reached in *Segers* v. *Ayers,* 95 Ark. 178, 128 S.W. 1045, is a close approach to the application of this doctrine.

Of course, it is well recognized that laches does not apply in such cases unless the opposing party has suffered prejudice as a result of the delay. *Lawrence* v. *Potter,* 91 W. Va. 361, 113 S.E. 266 (1922); *Creel* v. *Baggett Transportation Co., Inc.,* supra. This is in keeping with our own application of the doctrine of laches in other situations. See *Hendrix* v. *Hendrix,* 256 Ark. 289, 506 S.W. 2d 848; *Matlock* v. *McCracken,* 251 Ark. 972, 479 S.W. 2d 508; *McKim* v. *McLiney,* 250 Ark. 423, 465 S.W. 2d 911. In *Segers* v. *Ayers,* supra, we adopted language of the United States Supreme Court in *Mackall* v. *Casilear,* 137 U.S. 556, 11 S. Ct. 178, 34 L. Ed. 776 (1890), that is peculiarly appropriate here, viz:

> \*\*\* The doctrine of laches is based upon grounds of public policy, which require for the peace of society the discouragement of stale demands. And where the difficulty of doing entire justice by reason of the death of the principal witness or witnesses, or from the original transactions having become obscured by time, is attributable to gross negligence or deliberate delay, a court of equity will not aid a party whose application is thus destitute of conscience, good faith and reasonable diligence.

It is clear from our cases that the prejudice or disadvantage that makes the enforcement of a claim inequitable may lie in loss of evidence by death of principal witnesses or by

other means, or the obscuring of original transactions attendant upon passage of time, among other things.

We have no difficulty in finding that the delay in this case was unreasonable and the disadvantage to appellants was such as to make it inequitable at this late date to enforce appellee's claim to an interest in this real estate.

The issues were complex and numerous, to say the least, and the conclusion that their complexity was aggravated by the delay is inescapable. All parties to this litigation seem to agree that a hearing of sorts was held before the late Chancellor Guy Williams, soon after the case was at issue. No one seems to know just when this took place or what was done. There is testimony that some testimony was given at that time by Barbara Wellman. There is also testimony that no testimony was heard then. There was testimony that the chancellor had held that neither Helen Wellman nor the Gordons would lose the property, but that Barbara must be compensated for her interest and that the court left it to the lawyers to work out the amount. Some testimony indicated that only ten days were given. There is also testimony that indicates that no time limit was fixed. There is testimony that a representative of the abstract company that erroneously showed a relinquishment of dower by Barbara was present at the hearing and agreed to pay whatever amount was due Barbara. Blackmon testified that, as a result of this hearing, repeated assurances by Barbara's and Helen's attorneys that they would agree upon an amount, the abstract company representative's assurance in open court, and the ensuing delay, the opportunity to obtain service on the abstract company and bring it into court as a formal party had been lost. Although it is clear that there were some communications among the parties during the hibernation of the law suit, their nature and content are not shown. It is also suggested that there were other hearings of some sort during this extended period, but the record discloses nothing to indicate when they were held or what took place. There seems to have been a disagreement as to the basis for compensating Barbara. It appears that one view was that she was entitled to a life estate in a one-third interest. This question was not resolved before the trial on August 12, 1977.

It appears that the parties all agree that a court reporter was present at the hearing before Chancellor Williams, but they appear to disagree on the question whether any of the proceedings were taken down by the reporter. It is difficult to see how any of the many issues in this case could have been resolved at that time, without hearing evidence. It might be inferred that the entire hearing was only a settlement conference. One witness said that it took place in the judge's chambers.

The testimony of Longstreth and that of Martin would have been helpful. The testimony of Helen Wellman, appellants' grantor, was almost indispensable. The nature of her possession of this real estate is a critical issue. No one else was as well informed on that subject as she would have been. No one else could know what disinterested witnesses were available to testify on that question. Only Ward Martin knows why no appearance was made on the date he chose for trial of the case, after it had already been pending for 13 years. His testimony was also badly needed on another question. Harry Wellman and Barbara Wellman disagree on the circumstances surrounding the execution of the deed to Barbara. Harry said he was coerced by Martin and that he signed it in Martin's office. He also testified that Martin had discovered the error in the description of the first quitclaim deed to Helen and said so at the time, in Barbara's presence, but demanded that Harry sign the warranty deed to Barbara anyway. Barbara denied that there was any such conversation in her presence and stated that she knew nothing of any conveyance by Harry to Helen. She testified that the deed was signed in the courtroom. There is a clear indication from the record that Martin, who had retired from the practice of law before the case was tried, was physically unable to testify. It is suggested that O. D. Longstreth is dead.

The fact that time had obscured memories is clearly indicated by Gordon's reference to notes in testifying. It developed that he had, at some time, destroyed the notes he had taken at the hearing before Chancellor Williams, but he said he had copied them when he learned he was to have testified at a second trial, which had been scheduled, but not held. Later he admitted that his notes had been made some four or five years before the final hearing rather than at the

time of the first hearing. He had also written something on the notes the day he testified. He called the notes "something he had pulled back from his memory."

It was shown that appellants had built a house on the property and moved into it in 1962. This was done on assurance from Blackmon that, as a result of the first hearing, the understanding among him, Martin and Longstreth about the disposition of the case, and the commitment of the abstract company, there would be no risk involved.

This is a case which calls for the application of the doctrine of laches to appellee's lack of diligence in the prosecution of her suit.

The decree is reversed and the cause dismissed.

We agree. HARRIS, C.J., and BYRD and HICKMAN, JJ.