Della Lou WOLFORD *v.* St. Paul FIRE & MARINE
INSURANCE COMPANY

97-385                                          961 S.W.2d 743

Supreme Court of Arkansas
Opinion delivered February 12, 1998

*George Bailey*, for appellant.

*Womack, Landis, Phelps, McNeill & McDaniel*, by: *Paul McNeill*, for appellee.

RAY THORNTON, Justice. Appellant, Mrs. Della Lou Wolford, brought this medical–malpractice action against her deceased husband's physician, Dr. Nathan Strickland; White River Medical Center and its agents, servants, and employees; and St. Paul Fire and Marine Insurance Company. St. Paul was the liability insurance carrier for the medical facility and for Dr. Strickland. While litigation was pending, Dr. Strickland died. The trial court dismissed the claim against him with prejudice when appellant failed to file a motion for substitution of parties within ninety days following the notice of death. The White River Medical Center was dismissed without prejudice, and the case proceeded to trial against St. Paul on the remaining issue of medical malpractice of the Medical Center's nurses and staff. The trial court ordered a mistrial because of the relationship of a juror to a witness.

In preparation for a new trial, St. Paul made a motion in limine to preclude appellant's expert witness, Dr. Richard Williams, from testifying because he testified as to a national standard of care for nurses and did not demonstrate a familiarity with the standard of nursing care in Batesville, Arkansas, where the Medical Center was located. As Dr. Williams was the only expert–medical witness prepared to testify for appellant at the new trial, St. Paul orally requested that the court allow it to make a motion for summary judgment in the event that its motion in limine to suppress Dr. Williams's testimony was granted. St. Paul argued that summary judgment would be appropriate because appellant would not have a medical expert available to testify in the event of Dr. Williams's disqualification. The trial court granted both motions, and the case was dismissed.

Appellant brings this appeal from the circuit court's decision. For reversal, appellant makes four separate allegations of error: (1) that the trial court erred either in refusing to grant her motion for substitution of the deceased surgeon's estate as a party pursuant to Ark. R. Civ. P. 25(a)(1), or in refusing to extend her period of time under Ark. R. Civ. P. 6(b)(2) for filing the motion for substi-

tution; (2) that the trial court erred in granting the motion to dismiss the claim against Dr. Strickland with prejudice; (3) that the trial court erred in refusing to grant her motion for voluntary dismissal of the claim against Dr. Strickland prior to submission of the case to the court; (4) that the trial court erred in its application of the law in striking the testimony of her only expert medical witness, Dr. Williams, and subsequently granting summary judgment.

We conclude that the trial court did abuse its discretion in determining that appellant's proposed witness, Dr. Williams, was not qualified as an expert to testify as to the standard of nursing care applicable in 1992 in the area around Batesville, Arkansas, and therefore, summary judgment was not appropriate. We conclude that the trial court did not abuse its discretion in dismissing the action against Dr. Strickland because the motion for substitution of parties was not timely filed; however, in accordance with Ark. R. Civ. P. 41(b), we hold that the dismissal should have been without prejudice.

## I.  Substitution of Parties

First, appellant argues that the trial court's refusal to grant either her motion for an extension of time or her motion for substitution constituted an abuse of its discretion. We disagree and affirm on this point.

A notice of fact of death was filed on January 12, 1995, informing appellant that Dr. Strickland had died on September 22, 1994. On May 3, 1995, Dr. Strickland's counsel filed a motion to dismiss based on the fact that appellant had not filed a timely motion for substitution of parties. Dr. Strickland's counsel alleged that the motion for substitution of parties should have been made within ninety days from the January 12 filing date, and no such motion had been filed. He also noted in the supporting brief that appellant had filed a notice of claim against the estate shortly after the notice of death, and therefore argued that lack of notice of the fact of death should not be an excuse.

On May 8, 1995, appellant filed a motion for substitution of parties, well outside of the ninety-day period provided by Ark. R.

Civ. P. 25(a)(1). Appellant's counsel stated in a supporting affidavit that he and defendants' counsel had decided in a telephone conversation that they would choose a mutually convenient time to accomplish several changes "at one time" to make the parties proper. Dr. Strickland's counsel filed his own affidavit, responding to this allegation by saying that, according to his billing records, this conversation took place prior to Dr. Strickland's death and pertained to substituting parties for the medical facility and for the parties who were individual plaintiffs at the time. On May 16, 1995, appellant filed a supplemental motion for substitution of parties and motion for enlargement and extension of time pursuant to Ark. R. Civ. P. 6(b)(2).

On August 15, 1995, the trial court mailed a letter in which it set out its findings. In its letter, the trial court found that appellant did not file the motion for substitution of parties within the time period required under Ark. R. Civ. P. 25, and the court expressed its intention to grant Dr. Strickland's motion to dismiss this case pursuant to Ark. R. Civ. P. 25.

In our review, we look first to our applicable rule of civil procedure. The pertinent portion of Ark. R. Civ. P. 25 reads as follows:

> If a party dies and the claim is not thereby extinguished, the Court may order substitution of the proper parties. . . . *Unless the motion for substitution is made not later than ninety (90) days after the death is suggested upon the record by the service upon the parties of a statement of the fact of death, the action may* be dismissed as to the deceased party.

Ark. R. Civ. P. 25(a)(1) (emphasis added). It is not disputed by either party that the motion for substitution was made later than ninety days after appellant received notice of Dr. Strickland's death.

Appellant argues correctly that the use of the word "may" in the rule connotes that dismissal is not mandatory. We have stated that "the word 'may' as used in [a] rule implies permissive or discretional, rather than mandatory, action, . . ." *Lovett v. State*, 267 Ark. 912, 914, 591 S.W.2d 683, 684 (Ark. App. 1979) (citing *Nathan v. State*, 235 Ark. 704, 361 S.W.2d 637

(1962)). Here, likewise, the word "may" in the rule implies that dismissal is not mandatory; however, it is discretionary with the trial court. Accordingly, we cannot say that the trial court abused its discretion in acting expressly within the authority given to it under Rule 25.

Appellant argues in the alternative that the trial court should have granted her request for an enlargement or extension of time pursuant to Ark. R. Civ. P. 6(b). The applicable portion of that rule reads as follows:

> Enlargement: When by these rules or by a notice given thereunder or by order of the court an act is required or allowed to be done at or within a specified time, the Court for cause shown may at any time in its discretion: . . . (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of *mistake, inadvertence, surprise, excusable neglect, or other just cause* . . . .

Ark. R. Civ. P. 6(b)(2) (emphasis added).

In its letter ruling, the trial court said that both sides agreed that the conversation at issue, regarding "cleaning up" the parties and style of the case, occurred prior to the notice of fact of death. The trial court went on to state that the filing of the notice of fact of death should have prompted appellant's counsel to ask appellee's counsel "whether any such agreement was still in effect and why the Defendant Strickland had filed the Notice. No allegation is made that any agreement was made to extend the time for filing a motion to substitute the estate for the deceased defendant."

While appellant's counsel alleges that the intent of the conversation was to perform all the necessary style and party changes at one time, he does not contend that the conversation was meant as an agreement to extend the ninety-day period during which he was required to file a motion to substitute. We agree with the trial court that the notice of fact of death should have been appellant's stimulus to request a clarification. Further, as noted above, the notice of fact of death did prompt appellant's counsel to file a timely claim against Dr. Strickland's estate.

■ We conclude that appellant's argument does not allege that she was mistaken about the time during which she was required to respond or that the failure to file in a timely manner was the result of surprise, excusable neglect, or other just cause; therefore, we cannot say that the trial court abused its discretion in denying both appellant's motion for substitution and her motion for enlargement or extension of time.

## II. Dismissal with Prejudice

Appellant next argues that the trial court abused its discretion in dismissing the cause against defendant Strickland with prejudice. She asserts that Ark. R. Civ. P. 41(b) requires that the dismissal should have been a dismissal without prejudice. We agree, and modify the dismissal to be without prejudice.

After the trial court's August 15, 1995, letter, appellant's counsel sent a letter on August 18, stating that, if the dismissal were to be "with prejudice," he wanted a chance to hold a hearing and to brief the issue first. Then, on August 23, after receiving a copy of appellee's proposed order, appellant's counsel sent another letter, formally objecting to the form of the proposed order and renewing his former requests.

On September 12, 1995, appellant filed a motion for voluntary dismissal as to defendant Strickland, pursuant to Ark. R. Civ. P. 41(a). In her brief supporting both this motion and her objection to the dismissal with prejudice, appellant argued that Rule 41(b) requires that the dismissal pursuant to Rule 25 should be without prejudice, and she also argued that her motion for voluntary dismissal without prejudice should be granted. On November 13, 1995, the trial court entered its order, finding that the dismissal as to Dr. Strickland should be granted with prejudice.

Rule 41 states, in pertinent part:

> (b) *Involuntary Dismissal.* In any case in which there has been a failure of the appellant to comply with these rules or any order of court . . . , the court shall cause notice to be mailed to the attorneys of record . . . that the case will be dismissed for want of prosecution unless on a stated day application is made, upon a showing of good cause, to continue the case on the court's

docket. A dismissal under this subdivision is *without prejudice* to a future action by the appellant unless the action has been previously dismissed, whether voluntarily or involuntarily, in which event such dismissal operates as an adjudication on the merits.

Ark. R. Civ. P. 41(b) (emphasis added).

Appellant cites us to three cases that are particularly instructive in applying this rule. In *Professional Adjustment Bureau, Inc. v. Strong*, 275 Ark. 249, 251, 629 S.W.2d 284, 284–85 (1982), the appellant argued that the first dismissal under Rule 41 may never be with prejudice. We determined that a trial court is not absolutely prohibited from dismissing a case with prejudice for want of prosecution in all circumstances. *Id.* However, we said that a court's disposition of a case for lack of prosecution should *ordinarily* be without prejudice. *Id.* at 251, 629 S.W.2d at 285. In *Strong*, we distinguished that case from *Gordon v. Wellman*, 265 Ark. 914, 582 S.W.2d 22 (1979), and stated that unlike *Gordon*, where the case had been pending for thirteen years and dismissal with prejudice may have been warranted, a case involving one-time neglect did not warrant a dismissal with prejudice. *Id.*

Similarly, in *Superior Seeds, Inc. v. Crain*, 280 Ark. 142, 144, 655 S.W.2d 415, 416 (1983), the trial court had dismissed a case where the plaintiff twice disregarded the court's order to prepare a necessary instruction. On appeal, we said that, although the trial court was well within its authority in dismissing the suit, "[w]e treat the dismissal as one without prejudice." *Id.* (citing Ark. R. Civ. P. 41(b)).

In the third case, we took our foregoing rationale one step further. In *Insurance from CNA v. Keene Corp.*, 310 Ark. 605, 609, 839 S.W.2d 199, 202 (1992), the facts showed that the litigation had been ongoing for six years at the time that the trial court gave one of the parties ten days to substitute itself as the real party in interest. When the party did not appropriately amend the complaint within the ten-day period, the trial court granted a motion to dismiss the case. *Id.* In *Keene*, we stated that "Rule 41(b) of the Arkansas Rules of Civil Procedure gives the trial court the authority to dismiss cases in which the 'plaintiff has failed to comply . . . with any order of the court.'" *Id.* at 609, 839

S.W.2d at 202. Our standard of review of such a dismissal is whether the trial court abused its discretion. *Id.* We concluded that the dismissal was not arbitrary or an abuse of discretion, but we stated that "such dismissals are to be without prejudice" and modified the dismissal therein to be without prejudice. *Id.*

■ In the instant case, we conclude that the trial court's decision to dismiss the case was not an abuse of discretion. However, as the foregoing cases illustrate, after several amendments to Rule 41, we have consistently decided that such dismissals be without prejudice. We therefore affirm the dismissal, but modify it to be without prejudice.

## III. Voluntary Nonsuit

■ Because we modify the foregoing dismissal to be one without prejudice, it is not necessary to reach appellant's argument that the trial court erred in not granting her motion for voluntary dismissal without prejudice.

## IV. Qualification of an Expert Witness and Summary Judgment

In her last argument for reversal, appellant urges that the trial court erred in excluding Dr. Williams's testimony and in subsequently granting summary judgment. We conclude that the trial court's exclusion of Dr. Williams constituted an abuse of its discretion and that summary judgment was not appropriate.

In its third motion in limine, St. Paul claimed that Dr. Williams's deposition testimony indicated that he was not qualified to testify because he was not familiar with the medical facility in Batesville, Arkansas, nor was he testifying based on the standard of care for nurses in 1992 at the same or similar locality. After a hearing on the motion, the trial court granted St. Paul's motion in limine to exclude Dr. Williams's testimony and entered an order reflecting this decision. The trial court concurrently entered an order granting the St. Paul's motion for summary judgment. The trial court found that St. Paul was entitled to judgment as a matter of law because both parties had stipulated that this was a case that required expert medical testimony and the testimony of appellant's only expert witness had just been excluded.

The issue for which expert testimony was required is whether Mr. Wolford, now deceased, had received adequate care from the White River Medical Center's nurses and staff. As her expert witness, appellant offered Dr. Williams, who had been a board-certified surgeon, had remained licensed in New York, and had been licensed to practice medicine for fifty-six years. Dr. Williams had practiced in Warsaw, a farm town in upper New York state. Warsaw was described as a similar locality to Batesville in terms of population, number of physicians, and patient drainage and referral. Also, the hospital, where he practiced and held many positions including chief of staff, was described as similar in size, bed capacity, and equipment to the White River Medical Center. He taught nurses for twenty-five years at a three-year accredited RN school, and he trained nurses for duties in the operating room. While Dr. Williams had not practiced for thirteen years, he never ceased his study of medicine and his license remained current. He had previously testified as a medical expert witness in twelve states, and had reviewed between five hundred and one thousand cases.

■ ■ Our case law requires a plaintiff to present expert testimony to prove an action for medical injury when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge. *Reagan v. City of Piggott*, 305 Ark. 77, 80, 805 S.W.2d 636, 637-38 (1991). An expert need not be familiar with the practice in the particular locality, but must demonstrate a familiarity with "the standard of practice in a similar locality, either by his testimony or by other evidence showing the similarity of localities." *First Commercial Trust Co. v. Rank*, 323 Ark. 390, 401, 915 S.W.2d 262, 267 (1996) (holding the trial court abused its discretion in excluding the testimony of an emergency-medicine physician who met Arkansas's similar-locality rule). We look at geographical location, size, and character of the community; however, we base the similarity not on population or area, but on the similarity of the medical facilities, practices, and advantages. *Id.*

■ We have been presented with cases in which medical specialists from dissimilar fields have testified and stated therein that the physician must merely "exhibit knowledge of the sub-

ject." *Id.* at 399, 915 S.W.2d at 266. We stated that "[w]here a duly licensed and practicing physician has gained knowledge of the standard of care applicable to a specialty in which he is not directly engaged but as to which he has an opinion based on education, experience, observation or association with that specialty, his opinion is competent." *Id.*

Based on our case law, the foregoing evidence establishes an appropriate foundation that shows that Dr. Williams is familiar with the standard of practice in a locality (Warsaw) similar to Batesville. Although appellee argues that Dr. Williams's reference to a "national" standard of care should be a basis for exclusion, the argument is without merit. Dr. Williams is not an attorney, and it is the court's province to determine if an appropriate foundation has been made, showing Dr. Williams is familiar with the standard of practice in a locality such as Batesville. As seen from the evidence above, that foundation was shown.

In *Courteau v. Dodd*, 299 Ark. 380, 385, 773 S.W.2d 436, 439 (1989), this court, citing A.R.E. 702, held that, if there is a reasonable basis for saying a witness knows more of the subject at hand than a person of ordinary knowledge, his evidence is admissible. We have also stated that if an expert's opinion is merely weak or questionable, that fact bears on the weight to be given the testimony, and not its admissibility. *Ishie v. Kelley*, 302 Ark. 112, 116, 788 S.W.2d 225, 226-27 (1990).

Here, Dr. Williams's expert testimony touched on Alvie Wolford's medical and physical condition while he was a patient in the Medical Center, and he opined the nursing staff's failure to provide proper care and attention to Mr. Wolford had contributed to his death. Dr. Williams averred Mr. Wolford had been a victim of fluid overload, and essentially drowned in his own juices. He said that, after the doctors started an IV in Mr. Wolford's arm in the emergency room, the IV was never removed. Dr. Williams explained that Mr. Wolford was administered liquids by the gallon over many days, even though there were days when he could only get rid of one quart of urine. Mr. Wolford gained forty pounds from water intake. The doctor went into detail how the nurses' alleged failure of care caused Mr. Wolford's legs, arms, and face to

swell, and how the fluid filled Mr. Wolford's lungs and decreased the efficiency of his heart to pump blood. Dr. Williams concluded that several causes contributed to Mr. Wolford's death — abscess, peritonitis, a hole in the intestine, sepsis, fluid overload — and all of these causes exhibit symptoms nurses should have recognized and reported.

The medical treatment administered (and not administered) to Mr. Wolford is clearly a matter outside a person's ordinary knowledge, and in the circumstances surrounding Mr. Wolford's case, a jury could obviously have benefited from hearing expert testimony. If the fact that Dr. Williams has curtailed hands-on surgery since 1979, or another factor, might be considered a weakness in his medical background, that weakness is a matter for the jury to weigh; it is not reason to exclude his testimony.

The determination of an expert witness's qualification to testify is within the sound discretion of the trial court. *First Commercial Trust Company v. Rank*, 323 Ark. at 398, 915 S.W.2d at 266. However, we have stated that the exercise of this discretion is not absolute, and we will reverse where we find that the trial court has abused its discretion. *Id*. at 399, 915 S.W.2d at 266. We conclude that Dr. Williams possessed the required credentials and experience to testify in this case, and we hold that excluding Dr. Williams's testimony constituted an abuse of the trial court's discretion.

Because we hold that the trial court abused its discretion in excluding Dr. Williams's expert testimony, we also conclude that St. Paul was not entitled to judgment as a matter of law. Our rule states that summary judgment should only be granted where there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Ark. R. Civ. P. 56. Here, the testimony of Dr. Williams would have provided the requisite background to support a genuine issue of material fact as to whether the White River Medical Center's nurses and staff provided Mr. Wolford with adequate medical treatment. The resolution of this issue should have been within the province of the jury.

Accordingly, we reverse the trial court's decision granting summary judgment in favor of St. Paul, and we remand with instructions for the trial court to accept Dr. Williams as an expert witness in this case.

In sum, we affirm in part, as modified, and reverse and remand in part.