Cite as 2026 Ark. App. 208

# ARKANSAS COURT OF APPEALS
DIVISION II

No. CV-24-729

| | |
|---|---|
| MIKE ATKINSON, SPECIAL ADMINISTRATOR OF THE ESTATE OF VIRGINIA L. ATKINSON, DECEASED, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF VIRGINIA L. ATKINSON, DECEASED<br><br>                APPELLANT<br><br>V.<br><br>PARKWAY HEALTH CENTER, INC., D/B/A PARKWAY HEALTH CENTER; BAPTIST HEALTH D/B/A BAPTIST HEALTH HOSPICE; BAPTIST HEALTH; PARKWAY VILLAGE, INC.; BAPTIST HEALTH SENIOR CLINIC – PARKWAY VILLAGE; DIAMOND RISK INSURANCE, LLC; JOHN DOE INSURANCE COMPANIES 2 THROUGH 10, UNKNOWN DEFENDANTS; AND JOHN DOES 1 THROUGH 10, UKNOWN DEFENDANTS<br><br>                APPELLEES | Opinion Delivered April 1, 2026<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTEENTH DIVISION [NO. 60CV-18-3627]<br><br>HONORABLE MACKIE M. PIERCE, JUDGE<br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

Appellant Mike Atkinson[1] appeals a Pulaski County Circuit Court order directing a

verdict in favor of separate appellees Parkway Health Center, Inc., d/b/a Parkway Health

---

[1]Atkinson sued the appellees in his capacity as special administrator of the estate of Virginia L. Atkinson, deceased, and on behalf of Virginia's wrongful death beneficiaries.

Center; Baptist Health d/b/a Baptist Health Hospice; and their insurer, Diamond Risk Insurance, LLC (collectively, "Appellees"). The circuit court directed the verdict because it found that Atkinson failed to present expert testimony to either establish proximate causation or to satisfy the locality rule as set forth in Arkansas Code Annotated section 16-114-206 (Repl. 2016). On appeal, Michael challenges those findings and also contends the circuit court erroneously found that the statute of limitations barred consideration of any injuries sustained before June 1, 2016—two years before the filing of the original complaint in this matter. Concluding that Michael failed to present the required expert testimony to support his claims, we affirm.

This case originates from the death of Virginia Atkinson on August 9, 2016. In June 2018, Virginia's son Michael filed a wrongful-death suit against multiple entities[2] alleging that his mother had died as a result of their negligence. Because we conclude that the circuit court's decision to direct a verdict in Appellees' favor was properly based on Michael's failure

---

[2]The original complaint filed June 1, 2018, named the following defendants: Parkway Health Center, Inc., d/b/a Parkway Health Center; Baptist Health d/b/a/ Baptist Health Hospice; Baptist Health; Parkway Village, Inc.; Baptist Health Senior Clinic – Parkway Village; John Doe Insurance Companies 1 through 10, Unknown Defendants; and John Does 1 through 10, Unknown Defendants. In October 2018, Michael substituted Diamond Risk Insurance, LLC, for John Doe Insurance Company 1. The court granted partial summary judgment in January 2024 dismissing separate defendants Baptist Health; Parkway Village, Inc.; and Baptist Health Senior Clinic – Parkway Village from the action. The remaining unnamed John Doe defendants were never served and thus were dismissed by the entry of the circuit court's final judgment. Ark. R. Civ. P. 54(5).

to present the requisite expert testimony, only a brief recitation of the facts is necessary for an understanding of the issues on appeal.[3]

Sometime before August 2012, Virginia Atkinson, a widow, remarried and moved into Parkway Village, an independent living community, to live with her husband. In August of that year, Virginia and her husband transitioned into Parkway Health Center, a nursing home. He passed away in 2013.

In February 2016, Virginia developed a decubitus ulcer, or bedsore, on her coccyx. At the time, Virginia was suffering from advanced dementia that caused her to have severe contractures of her arms, hands, and legs and resulted in her eventual refusal to eat and drink at times. By June 1, her bedsore had grown and was infected. She began losing a significant amount weight and became malnourished and severely dehydrated. Her hands were so severely deformed from the contractures that her fingernails were digging into her hands. Her leg contractures made it impossible for her to lie flat in bed. By this time, she had been placed on hospice, and her son Michael, who was her power of attorney, had informed Parkway Health Center that she should not receive aggressive care, i.e., no CPR, no hospital trips, and no feeding tubes. Instead, Parkway Health Center and Baptist Health Hospice were to provide Virginia with only pain management and end-of-life comfort care.

---

[3]Appellant's counsel is advised that Arkansas Supreme Court Rule 4–2(a)(6) states that "[t]he appellant's brief shall contain a concise statement of the case without argument." While appellant's statement of the case violates this rule in that it is clearly argumentative, it is not so flagrant that we must order rebriefing.

While under hospice care, Virginia was treated by three different physicians, was cared for by nursing home and hospice nurses, was visited by a social worker, and received pastoral care. The nurses were ordered to clean, medicate, and dress Virginia's wounds. They were also ordered to provide her with hand care, including soaking her hands in Dakin's solution, trimming her nails if needed, and stretching her fingers. Staff was to administer morphine sulfate for pain thirty minutes before hand care and every two hours as needed.

On June 30, Virginia's daughter, Annette Haynes, was visiting Virginia and discovered the advanced nature of Virginia's ulcer. She photographed the wound and sent the picture to Michael. Michael had her immediately transferred to the hospital for treatment. Unfortunately, Virginia passed away on August 9 after being transferred from the hospital to another nursing facility.

On June 1, 2018, Michael filed suit. Because of the two-year statute of limitations applicable to medical-malpractice actions, the circuit court granted a motion in limine barring evidence of any alleged acts of negligence occurring before June 1, 2016. Thus, Michael was limited to proof of negligence during a thirty-day period from June 1 until to June 30 before Virginia was admitted to the hospital for treatment.

The case eventually proceeded to a jury trial on May 7, 2024. At trial, Michael presented the testimony of two expert witnesses—Nurse Maryann Hewston and Dr. Richard Dupee. They opined that the appellees had deviated from the standard of care in their care

4

and treatment of Virginia and that the deviations caused Virginia pain and suffering and hastened her death.[4]

Regarding the applicable standard of care, the following colloquy took place between Nurse Hewston and Michael's attorney:

Q:      In the United States of America, is there a national standardized standard of care for the operating of long-term care facilities?

A:      Yes.

Q:      And how did you become familiar with that?

A:      Over my years of working in nursing, I'm familiar with the nursing standard of care, because we perform it every day when we're providing care. But I'm also familiar with the nursing home regulations because I got involved in long-term care in 1992 in opening up our hospital-based skilled nursing facility.

Q:      Are the - -

A:      And I use it every day, because I'm still working.

Q:      Do the national standards apply to the states?

A:      They mimic them, yes. They're very similar. They have resident rights. They have all the different things that the federal - - federal and state regulations mimic each other.

Q:      An if Arkansas has adopted the national standards - - first of all, are you aware if Arkansas has adopted the national standards?

A:      Yes.

---

[4]Notably, their opinions were based solely on the nursing home's medical records. Nursing-home staff documented their care in a paper record. Care provided by hospice was documented in an electronic medical-records system with some notes also being documented in the nursing home's paper record. Michael provided his experts only with the former.

. . . .

Q:	Now, you're familiar with the Arkansas rules and regulations?

A:	Yes, I am.

Q:	And you have seen the regulations that establish certain licensing standards that describe what must be done in order to have and maintain a license?

A:	Yes.

On cross-examination, Nurse Hewston was asked whether she was testifying as to the standard of care for both the nursing home and hospice, and she stated her opinions related to both providers.

Dr. Dupee, an internist in geriatric nutrition at Tufts Medical Center in Boston, also provided testimony against both appellees. Unlike Nurse Hewston, however, he was not questioned about his familiarity with the local standards of care applicable to either appellee. Nevertheless, he stated that, within a reasonable degree of medical certainty, the nursing home and hospice were not providing appropriate medical treatment to Virginia.

Dr. Dupee also opined, to some extent, on proximate causation.  On this point, the following colloquy occurred:

Q:	Within a reasonable degree of medical certainty, did the failure to provide appropriate care and treatment to [Virginia] cause her mental, psychosocial harm?

A:	Oh, yeah, no question. I mean, it's a painful pressure ulcer. It hurts. It wore her down. It took away what limited reserve she had, and she died as a result.

Q:	In the absence of the wound that was there in June, did she have any condition that was leading -- that would have led to her imminent death?

6

A:    No. She had dementia. And as an expert in dementia, which I kind of consider I am, I think that it's almost impossible to say when a patient is going to die from their dementia. So, certainly, for sure she was not dying from dementia in June. But we have this terrible pressure ulcer, which was a significant contributing cause to her death.

Q:    Within a reasonable degree of medical certainty, was the reason that you find that the hospice order to re-certify her for June of 2018 [sic], was a result of the pressure sore?

A:    Yes. That's -- in my opinion, that's why she was appropriate for recertification.

. . . .

Q:    Failure to document the pressure ulcers, the assessments, shape, size, colors, the odors, more than those eight pages of notes during which addressed the wound, was that documentation something that caused, within a reasonable degree of medical certainty, harm to this resident, physical harm?

A:    Well, remember the documentation reflects assessments; right? So if you assess something, you document it. You assess it, as I mentioned, minimally once a week, three or four times a week, so the record reflects assessments.

If the record doesn't say anything for days and days and days about the pressure ulcer, which we just saw then it wasn't assessed, in my opinion, and therefore harm was done.

At the close of all the evidence, appellees moved for a directed verdict, asserting that Michael had failed to offer an expert opinion on the standard of care in the requisite locality, Little Rock, Arkansas; instead, Michael offered testimony regarding only the national and/or statewide standard of care, which is insufficient under the statute. They also asserted that Michael failed to present sufficient evidence of proximate causation. More specifically, they argued that Michael failed to present evidence regarding both what happened to Virginia once she left Parkway Health Center and what caused her death other than his claim that

Virginia died from her wound, which was present before June 2016. As a result, Michael failed to adequately present evidence that, but for some action or inaction on the part of the appellees in June 2016, Virginia would have lived. The court granted the appellees' motion.

Michael timely filed a motion to reconsider. The court did not rule on his motion, and it was deemed denied. A timely notice of appeal followed.

On appeal, Michael challenges the circuit court's grant of a directed verdict as it relates to the absence of expert testimony regarding standard of care in a particular locality and on proximate causation. He further argues that the circuit court erred in concluding that the statute of limitations barred consideration of injuries before June 1, 2016, because Virginia was under a continuing course of treatment within the facility. Because Michael failed to satisfy the requirement of the medical-malpractice statute that an expert attest to the standard of care in the relevant or similar locality, we affirm.

A motion for directed verdict should be granted only if there is no substantial evidence to support a jury verdict. *Wynne-Ark., Inc. v. Asphalt Producers, LLC*, 2025 Ark. App. 540, 726 S.W.3d 620 (citing *Smith v. Heather Manor Care Ctr., Inc.*, 2012 Ark. App. 584, 424 S.W.3d 368). Stated another way, a motion for a directed verdict should be granted only when the evidence viewed is so insubstantial as to require the jury's verdict for the party to be set aside. *Id.* Where the evidence is such that fair-minded persons might reach different conclusions, then a jury question is presented, and the directed verdict should be reversed. *Id.* Substantial evidence is evidence of sufficient force and character to induce the mind of the fact-finder past speculation and conjecture. *Id.*

Here, the circuit court granted a directed verdict in favor of the appellees, finding that Michael failed to present the expert testimony necessary to support his causes of action. After reviewing the evidence presented at trial, we agree.

In medical-malpractice actions, unless the asserted negligence can be comprehended by a jury as a matter of common knowledge, a plaintiff has the additional burden of proving three propositions by expert testimony: (1) the applicable standard of care; (2) the medical provider's failure to act in accordance with that standard; and (3) that the failure was the proximate cause of the plaintiff's injuries. Ark. Code Ann. § 16-114-206(a) (Repl. 2016). When the defendant demonstrates the plaintiff's failure to produce the requisite expert testimony, the defendant has demonstrated that no genuine issues of material fact exist and is therefore entitled to a judgment as a matter of law. *See Johnson v. Schafer*, 2018 Ark. App. 630, 565 S.W.3d 144.

Here, Michael's expert witnesses, Nurse Hewston and Dr. Dupee, failed to satisfy the requirement that an expert witness attest to the standard of care in the same or similar locality. Our supreme court has endorsed the locality rule as to the standard of care in Arkansas. *Plymate v. Martinelli*, 2013 Ark. 194. In order to meet the locality requirement, an expert must demonstrate familiarity with the standard of practice in that or a similar locality. *Bailey-Gray v. Martinson*, 2013 Ark. App. 80. Although we consider the geographical location, size, and character of the community, similarity of localities is based not on population or area but on the similarity of the local medical facilities, practices, and advantages. *Id*.

Turning to the facts at hand, it should be noted that Nurse Hewston's testimony regarding only the national standard of care, which she claimed applied to Arkansas as a whole—is insufficient. Dr. Dupee did not provide any testimony as to locality at all. Arkansas strictly adheres to the locality rule. *Harvey v. Johnson*, 2025 Ark. App. 393, 715 S.W.3d 930. Our courts have consistently held that testimony regarding a national or general statewide standard of care is insufficient. *Plymate*, 2013 Ark. 194 (expert equated state and national standard of care; court held statewide standard of care insufficient); *Wolford v. St. Paul Fire & Marine Ins. Co.*, 331 Ark. 426, 961 S.W.2d 743 (1998) (testimony regarding a national standard of care is insufficient when expert did not demonstrate familiarity with locality where alleged malpractice occurred); *Harvey*, *supra* (expert did not properly establish similarities between the out-of-state and Arkansas locality; court held national standard of care insufficient); *Gilbow v. Richards*, 2010 Ark. App. 780 (expert did not testify to any knowledge regarding the locality or its standard of care; court held national standard of care insufficient). Here, Michael simply failed in his burden of proof on the requisite standard of care in Little Rock or Pulaski County, Arkansas.

Michael contends, however, that appellees waived any challenge to the locality rule when they conceded that Nurse Hewston was an expert during trial. Michael misapprehends the locality rule.

At trial, the appellees objected to the court informing the jury that Nurse Hewston had been qualified as an expert witness. They argued that it was enough for the witness to be considered an expert and be allowed to express her opinions without the court identifying

10

the witness as an expert to the jury. In essence, they argued that to inform the jury that the witness was an expert was tantamount to a comment on the witness's credibility. In any event, Michael's argument misses the point. Even if appellees stipulated that Nurse Hewston was qualified to give an opinion as to the requisite standard of care, she did not do so.

Because Michael failed in his burden of proof on this point, we need not address any of his other arguments on appeal.

Affirmed.

GLADWIN, J., agrees.

VIRDEN, J., concurs without opinion.

*Wilkes & Associates, P.A.*, a/k/a *Wilkes & McHugh, P.A.*, by: *James L. Wilkes II*; and *The Edwards Law Firm, PLLC*, by: *Robert H. Edwards*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, PLLC*, by: *Ben Jackson*, *Graham Talley*, and *Adam D. Franks*, for separate appellees Parkway Health Center, Baptist Hospice, and Diamond Risk Insurance, LLC.