2010 Ark. App. 850
**Robert Avron MALEY, Appellant**

v.

**Ann Elizabeth CAULEY
(Maley), Appellee.**

**No. CA 10–418.**

Court of Appeals of Arkansas.

Dec. 15, 2010.

Francis Parker Jones III, Dyer and Jones, Benton, for appellant.

Bonnie Lee Robertson, Robertson Law Firm, North Little Rock, for appellee.

JOHN B. ROBBINS, Judge.

Appellant Robert Avron Maley appeals the modification of visitation and of child support entered by the Pulaski County Circuit Court in January 2010. The order awarded some relief requested by his ex-wife, appellee Ann Elizabeth Maley, and it altered provisions of the March 2007 divorce decree entered by the same trial judge. Robert appeals, contending that the order is clearly erroneous. We affirm.

The parties divorced in March 2007 pursuant to an agreed decree and property settlement agreement approved by the trial judge. In it, the parties ended their marriage and agreed:

> The parties shall share joint legal and physical custody of the parties' minor children[.] Neither party shall pay child support to the other party but rather each parent shall provide for the children when they are in that parent's respective care and custody. As necessary, the parties will share any expenses for the minor children, but both parties must agree to expenditures, other than medical and dental expenses.

In a separate provision, the parties agreed to split any cost of medical insurance and out-of-pocket expenses related to medical and dental care. Each parent was allowed two children for tax-exemption purposes.

Their visitation schedule, specifically noting that they each shared joint physical and legal custody, permitted Ann to have the children Monday, Wednesday, and every other weekend; Robert was permitted

to have the children Tuesday and Thursday nights until 8 p.m. and alternate weekends. Major holidays were divided with specificity. The parties agreed to live within fifty miles of one another, and if different school districts were attached to their residences, then Ann's address would prevail. If either party moved more than fifty miles outside the city limits of Little Rock, then the remaining parent would become the primary custodian, entitled to child support from the parent who moved. Other provisions of the decree are not material to this appeal.

In November 2008, Ann filed a motion to modify the decree asserting as a material change in circumstances: that Robert had not significantly contributed to the children's expenses as agreed; that she was struggling financially; that she often had to wait weeks prior to being reimbursed; that the children were tense and uncomfortable with Robert and the woman he was living with; that Robert should be ordered to participate in family counseling with the children; that she should be awarded primary custody of the children; and that Robert should be ordered to pay child support. She made other requests that are immaterial to this appeal. Robert filed a response through an attorney, generally denying the allegations and asking that the motion be dismissed.

Before the hearing, Robert's attorney was permitted to be relieved as counsel. The issues were set for a hearing in December 2009. Ann appeared, represented by counsel, and Robert appeared pro se.

The only witnesses were Ann and Robert. It was undisputed that the parties lived in very close proximity to one another in Pulaski County; Ann lived in Sherwood and Robert lived in Jacksonville. Ann recounted that she was bearing the lion's share of expenses, that she was the parent primarily responsible for the children's activities, transportation, school needs, and medical necessities, and that Robert was not cooperative in reimbursing her. Ann said Robert was not allowing the children to participate in some of their extracurricular activities if they occurred on his weekends. She also complained that the children were being returned by Robert too late on Tuesday and Thursday nights, which necessitated the children staying up late to finish homework. She said this affected their grades, and they were tired and upset. She requested that Tuesday and Thursday night visitation end at 6:30 p.m. Robert did not cross-examine her.

In his testimony, Robert candidly agreed he had been unreliable in sharing the children's expenses. Regarding his time with the children, he said that they often visited his wife at her place of employment, and they finished dinner during the week between 7:00–7:30 p.m. But, he typically returned the children to Ann during the week around 9:00 p.m. He denied knowing about any problems with homework. When his examination was completed, Robert did not call any witnesses.

Both of their affidavits of financial means were entered into evidence. At the conclusion, the judge asked if Robert had anything else to add, and he said, "No." Then, the judge calculated a child-support figure and changed the end of Robert's visitation on Tuesday and Thursday from the decreed time of 8:00 p.m. to 7:00 p.m.

A formal order followed in January 2010, and it recited that (1) Robert would pay child support in the amount of $352 biweekly; and (2) Robert's two weekday visitations would end at 7:00 p.m. There were also other items addressed, but they are

not necessary for our consideration.[1] All other orders not specifically modified remained in full force and effect. It is from the January 2010 order that Robert appeals. Ann did not cross-appeal.

We review custody and child-support matters de novo on the record, but we will not reverse a trial court's findings of fact unless they are clearly erroneous or clearly against the preponderance of the evidence. *Evans v. Tillery,* 361 Ark. 63, 204 S.W.3d 547 (2005). De novo review does not mean that we can entertain new issues on appeal when the opportunity presented itself for them to be raised at the trial court level but there was no argument presented to the trial court. *Lamontagne v. Ark. Dep't of Human Servs.,* 2010 Ark. 190, 366 S.W.3d 351; *Roberts v. Yang,* 2010 Ark. 55, 370 S.W.3d 170. We give due deference to the trial judge in matters of the credibility of the witnesses and the weight to be given testimony. *Evans, supra.* This deference is even greater in child-custody matters. *Hunt v. Perry,* 355 Ark. 303, 138 S.W.3d 656 (2003). A ruling regarding child support is reviewed under an abuse-of-discretion standard. *Evans, supra.*

We first address the modification in visitation. In order to make changes to custody or visitation, the moving party must first demonstrate a material change in circumstances. *Guest v. San Pedro,* 70 Ark. App. 389, 19 S.W.3d 62 (2000). The primary consideration is always the best interest of the child. *Hamilton v. Barrett,* 337 Ark. 460, 989 S.W.2d 520 (1999). Important factors to consider in determining reasonable visitation are the wishes of the child, the capacity of the party desiring visitation to supervise and care for the child, problems of transportation and prior conduct in abusing visitation, the work schedule or stability of the parties, and the relationship with siblings and other relatives. *See Hass v. Hass,* 80 Ark. App. 408, 97 S.W.3d 424 (2003). Visitation is left to the sound discretion of the trial court. *Id.*

Where the trial court fails to make findings of fact on material change of circumstances, we are permitted on de novo review to conclude that there was evidence from which the trial court could have found such changed circumstances. *Hamilton, supra; Campbell v. Campbell,* 336 Ark. 379, 985 S.W.2d 724 (1999); *Word v. Remick,* 75 Ark. App. 390, 58 S.W.3d 422 (2001). If a party does not request specific findings according to Ark. R. Civ. P. 52(b), the trial judge does not have to expressly detail the facts supporting a finding that a material change in circumstance occurred.

Here, the trial court did not enumerate material changes in circumstances warranting a change in the visitation schedule. But Robert did not request specific findings of fact. In fact, Robert was silent when the trial judge was making oral findings. On de novo review, we hold that there were material changes in circumstances that warranted a change in the visitation schedule.

Ann explained that Robert was routinely keeping the children during the week until 9:00 p.m., later than the decreed time of 8:00 p.m. Ann testified that the children were tired, upset, and suffering lowered grades due to staying up late to finish homework. Notably, Ann asserted material changes in her motion before the court. The scheduling change affected two hours

---

1. The child-support order recited a payment plan for past-due child support. The order further enumerated the method to obtain reimbursement for non-covered medical expenses. The order was silent as to the mother's request for primary custody, for all the children as tax exemptions, and for mandatory family counseling.

per week to accommodate the children's academic needs. We conclude that this minor alteration was entirely appropriate and in the best interest of the children. Stated another way, we are not firmly convinced that a mistake has been committed. *Fonken v. Fonken,* 334 Ark. 637, 976 S.W.2d 952 (1998). We affirm on this point.

The more pressing question is the entry of a child-support order. Although Ann requested to be granted primary custody, that request was not granted and she did not appeal. The parties remained joint custodians in name, which is permissible under Ark.Code Ann. § 9–13–101(b)(1)(A)(ii). Factors that the trial court should consider in deciding whether there has been a material change in circumstances include remarriage of the parties, a minor reaching the age of majority, change in the income and financial conditions of the parties and families, the ability to meet current and future obligations, and the child support chart. *Harris v. Harris,* 82 Ark. App. 321, 107 S.W.3d 897 (2003). The question then boils down to this: Did Ann demonstrate material changes in circumstances that warranted a change in the child-support arrangement? We believe so.

Robert argues that as a joint custodian, he should not be ordered to pay child support at all because the parties agreed to divide expenses for their children equally, although, he never made this argument to the trial court. Even so, Robert was undisputedly not abiding by that agreement since their divorce. All parents have a legal and moral duty to support their children. *McGee v. McGee,* 100 Ark. App. 1, 262 S.W.3d 622 (2007). State law does not allow individuals to pick and choose between previous debts and the support of their children. *Evans, supra.* This is the material change.

A trial court is required to reference the family support chart, and the amount specified by the chart is presumed to be reasonable. *Evans, supra.* In Administrative Order Number 10, section V.a., our supreme court set forth "Deviation considerations" that include basic living requirements such as transportation, education, food, shelter, and clothing expenses. In section V.b.6., our supreme court set forth additional factors that may warrant adjustments to child-support obligations, and it specifically includes consideration of "joint custody arrangements." Section V.c. states that the application of the deviation factors may be considered for both parents. Given this mandate from our supreme court, it is clear that child-support obligations are contemplated in joint custody situations.

Here, the trial judge calculated Robert's biweekly child-support duty by referencing his net biweekly income of $1,142.51, and applied that income to the chart for two children, instead of the three children that remained minors, which translates into the $352 biweekly support in this order.[2] It is apparent that the trial judge calculated Robert's child-support duty in accordance with the factors of the family-support chart.

In summary, we are not convinced that the trial court clearly erred in either finding, so we affirm.

Affirmed.

GRUBER and BROWN, JJ., agree.

2. No party challenges the accuracy of the figures calculated from the chart.