2011 Ark. App. 648
**Kristi M. GROVE, Appellant**

v.

**Jeffrey GROVE, Appellee.**

**No. CA 11–173.**

Court of Appeals of Arkansas.

Nov. 2, 2011.

John Skylar Tapp, Hot Springs, for appellant.

Michael Hunter Crawford, Hot Springs, for appellee.

LARRY D. VAUGHT, Chief Judge.

Appellant Kristi Grove challenges the order of the Garland County Circuit Court awarding custody of her two children to their father, appellee Jeffrey Grove, and giving her supervised visitation based on the court's findings that a material change in circumstances occurred and that the change of custody was in the children's best interests. Kristi argues on appeal that (1) the trial court abused its discretion when it relied on expert witness testimony about Parental Alienation Syndrome (PAS) because it does not meet the *Daubert* test for the admissibility of scientific evidence, and (2) the trial court's custody and visitation rulings are clearly erroneous. We affirm.

The parties have two children, AG and RG, who at the time of the hearing were eleven and seven, respectively. The parties' divorce decree was entered on August 10, 2004, at which time Kristi had custody of the children and Jeffrey had visitation.

In June 2006, Jeffrey filed a petition for contempt and for modification of visitation, alleging that Kristi was in violation of the parties' custody agreement due in large part to her efforts to alienate the children from him. He later filed a motion for a mental evaluation of the parties and their children. In January 2007, the trial court ordered a family psychological evaluation by Dr. Paul Deyoub. In a May 8, 2007 report, Dr. Deyoub concluded that Kristi and her parents were poisoning the children against their father with unsubstantiated abuse allegations in an effort to alienate them from him. In November 2007, the parties agreed to a consent order wherein Kristi and Jeffrey shared joint custody of the children with Kristi having primary physical custody and Jeffrey hav-

ing visitation. The order included detailed information concerning Jeffrey's visitation rights and provisions that Kristi give Jeffrey all school, medical, and caregiver information; both parties participate in family counseling; both parties not criticize or allow others to criticize the other party in the presence of the children; and Kristi participate in a "Children in the Middle" program.

On February 24, 2009, Kristi filed a petition for change of custody. She alleged that a material change in circumstances had occurred since the 2007 consent order was entered and that it was in the children's best interests that she have sole custody. Jeffrey counterclaimed for a change of custody, alleging that Kristi failed and refused to comply with the 2007 consent order regarding visitation and counseling and that she continued to alienate the children from a meaningful relationship with him. As part of his counterclaim, Jeffrey requested that the parties and the children submit to another evaluation with Dr. Deyoub, which the trial court granted.[1]

Dr. Deyoub authored a second report dated September 25, 2009. In his twenty-four-page report, Dr. Deyoub concluded, as he did in 2007, that Kristi and her parents had continued to coach the children to make false allegations of abuse against Jeffrey in an effort to alienate them from him. He opined that Kristi should not have sole custody. Instead, Dr. Deyoub concluded that Jeffrey should have primary custody of the children with Kristi having visitation rights.

Thereafter, Kristi requested, at her expense, that the parties submit to a psychological evaluation with an expert of her choosing. The trial court granted the request, and Dr. Warren Seiler Jr. was selected. In his December 11, 2009 twenty-six-page report, Dr. Seiler also concluded that the children had been "regularly pressured and brainwashed [by Kristi and her parents] into becoming convinced that their father is a villain and a man to be feared." Dr. Seiler stated that he was concerned about the future well-being of the children in Kristi's primary custody. He concluded that full custody of the children should be given to Jeffrey and that Kristi be given supervised visitation.

Hearings were held on December 18, 2009, February 10, 2010, and April 27, 2010, and many witnesses testified.[2] On May 27, 2010, the trial court issued a letter opinion placing custody of the children with Jeffrey, ordering Kristi to pay child support and maintain insurance on the children, and awarding temporary supervised visitation to Kristi, to be followed by unsupervised visitation. The order outlining the trial court's findings was entered September 1, 2010, and stated:

1. A significant and material change of circumstances has occurred so that it is in the best interest of the children that legal and physical custody of the minor children ... should be placed with the Plaintiff, Jeffrey Grove.

---

1. Jeffrey also requested, and the trial court granted the request, that an attorney ad litem be appointed for the benefit of the children.

2. Those witnesses included Dr. Deyoub (forensic psychologist), Dr. Seiler (adolescent and adult psychiatrist), Kathy Gladden (counselor), Jimmy Forsythe (children's school principal), Ward Menzies (children's teach-

er/coach), Lawrence Bishop (Kristi's boyfriend), John Plyler Jr. (RG's baseball coach), Julia Mathews (Jeffrey's ex-wife), Kevin Smead (pastor of Kristi, her children, and her parents), Grady Richard Nutt (Kristi's father), Carol Ann Nutt (Kristi's mother), Kristi, Carol Grove (Jeffrey's mother), Beverly Bejarano (counselor), Donna Trumbo (Jeffrey's girlfriend), and Jeffrey.

2. Such significant change of circumstances includes, but is not limited to, the following:

a) Defendant has failed to comply with the parties' Joint Custody Agreement;

b) Defendant has failed to follow the visitation schedule and initially interfered with visitation with the Plaintiff;

c) Defendant has failed and refused to cooperate in counseling as ordered by the Court;

d) Defendant has alienated the minor children from a meaningful relationship with their father;

e) Defendant has embarked on a course of conduct designed to end or substantially limit the contact of the children with the Plaintiff; and

f) Defendant has intentionally perpetrated or acquiesced in false accusations against the Plaintiff and has allowed such statements to be made in the presence of the minor children.

Kristi timely appealed from this order.

■ On appeal, Kristi argues that the trial court abused its discretion in relying on expert witness testimony about PAS because it does not meet the *Daubert* test for the admissibility of scientific evidence. Our case law clearly states that we review the admission of expert testimony under an abuse-of-discretion standard. *Dye v. Anderson Tully Co.*, 2011 Ark. App. 503, at 9, 385 S.W.3d 342, 348. In discussing our standard of review for evidentiary rulings, we have said that trial courts have broad discretion and that a ruling on the admissibility of evidence will not be reversed absent an abuse of that discretion. *Id.* at 9–10, 385 S.W.3d at 348–49.

Kristi argues that the testimony of Drs. Deyoub and Seiler, about the discredited psychological theory of PAS, should have been excluded as unreliable scientific evidence under |₅*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). She contends that PAS is premised on a verifiably false assumption, is not supported by empirical evidence, and has been rejected by the scientific community.

■ We, however, are unable to address this argument because it is not preserved for appeal. At no time below did counsel for Kristi object to the PAS evidence. No motions were filed seeking to exclude the PAS evidence. Counsel did not object to the admission of the reports or testimony of Drs. Deyoub or Seiler that contained the PAS evidence. Objections to evidence must be made at the time the evidence is introduced. *Oates v. Oates*, 2010 Ark. App. 346, at 4, 2010 WL 1609411 (citing *Edwards v. Stills*, 335 Ark. 470, 503–04, 984 S.W.2d 366, 383 (1998) (to preserve a point for appeal, a proper objection must be asserted at the first opportunity after the matter to which objection has been made occurs)). Therefore, we must affirm on this point.

Next, in two separate points on appeal, Kristi argues that the trial court clearly erred in awarding Jeffrey full custody of the children while awarding her only supervised visitation. She argues there was a lack of evidence of a material change in circumstances; specifically, she contends that there was no evidence that she failed to follow the court's visitation schedule, that she failed to cooperate in counseling, or that she alienated the children from Jeffrey. She also argues that the change of custody was not in the children's best interest, claiming that there is an abundance of evidence in the record that she is the better caregiver. She points to evidence that she has been the children's primary caretaker; she has been heavily involved in the boys' school and extracur-

ricular activities; she has a good, stable job with steady income; she pays for the children's private school; and she properly feeds, bathes, and clothes the children. In contrast, according to Kristi, the record demonstrates that Jeffrey does not regularly attend the children's school and extracurricular functions, he struggles to earn a living, he has failed to pay child support and has written her "hot checks," he has a problem with drinking alcohol, he has been in numerous romantic relationships since their divorce, and he is argumentative and combative.

Our standard of review in child-custody cases is well established. We consider the evidence de novo, but will not reverse unless the trial court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Tribble v. Tribble*, 2011 Ark. App. 407, at 9, 384 S.W.3d 574, 579. Findings are clearly against the preponderance of the evidence when we are left with an irrefutable and express belief that a mistake has occurred. *Id.* at 9, 384 S.W.3d at 579. We give due deference to the superior position of the trial court to view and judge the credibility of the witnesses. *Id.*, 384 S.W.3d at 579. This deference to the trial court is even greater in cases involving child custody, as a heavier burden is placed on the trial court to utilize to the fullest extent its powers of perception in evaluating the witnesses, their testimony, and the best interest of the child. *Id.*, 384 S.W.3d at 579. Child-custody cases are unique because there are no other cases in which the superior position of the trial court to assess witness credibility carries as much weight. *Id.*, 384 S.W.3d at 579. The primary consideration in child-custody cases is the welfare and best interests of the children, all other considerations are secondary. *Id.*, 384 S.W.3d at 579.

In order to make changes to custody or visitation, the moving party must first demonstrate a material change in circumstances. *Maley v. Cauley*, 2010 Ark. App. 850, at 5, 378 S.W.3d 808, 811. The primary consideration is always the best interest of the child. *Maley*, 2010 Ark. App. 850, at 5, 378 S.W.3d at 811. Important factors to consider in determining reasonable visitation are the wishes of the child, the capacity of the party desiring visitation to supervise and care for the child, problems of transportation and prior conduct in abusing visitation, the work schedule or stability of the parties, and the relationship with siblings and other relatives. *Id.*, 378 S.W.3d at 811. Visitation is left to the sound discretion of the trial court. *Id.*, 378 S.W.3d at 811.

Giving due deference to the superior position of the trial court to weigh the credibility of the witnesses, we cannot say that its findings were clearly against the preponderance of the evidence. The trial court found that Kristi failed to comply with the parties' custody-and-visitation agreement, she failed to cooperate in counseling as ordered, she alienated the children from a meaningful relationship with Jeffrey, sought to end or substantially limit the contact between Jeffrey and the children, and she intentionally perpetrated or acquiesced in false accusations against Jeffrey and allowed such statements to be made in the presence of the children. The record supports these findings.

Jeffrey testified that Kristi had not complied with the prior custody order. He offered more details about this to Dr. Deyoub, who reported that since the 2007 consent order was entered, Kristi had consistently frustrated Jeffrey's visitation. Jeffrey told Dr. Deyoub that for seven months he did not receive regular phone visitation as ordered; he had only one Thanksgiving holiday with his children in the past six years; he was not permitted to participate in the children's Halloween

activities; Kristi cancelled a weekend visitation stating that the kids were ill, but she provided no doctor's excuse and did not reschedule the visitation; and Kristi cancelled counseling sessions (Ms. Gladden, the counselor, confirmed that Kristi had cancelled at least one of Jeffrey's sessions with the children).

In addition, the trial court found that Kristi was alienating the children from Jeffrey and was seeking to end their contact with him. The evidence supporting this finding was overwhelming. First, it was Kristi, who already had primary custody of the children, who initiated this current action seeking to acquire sole custody with the intent to eliminate Jeffrey's visitation.

Second, as stated above, both Drs. Deyoub and Seiler recommended that Kristi not have primary custody, that primary custody be changed to Jeffrey, and that Kristi be given supervised visitation initially. Both doctors testified that Kristi and her parents had engaged in a course of conduct to alienate Jeffrey from the children by trying to convince or pressure them into thinking that Jeffrey is an evil father/person. According to the evidence, this was accomplished by Kristi and her parents either coaching or pressuring the children to lie about their father for fear of loss of affection by their mother and grandparents. In this case, there were many false allegations of abuse made by the children.[3] The doctors testified that there was no evidence to support any of the children's allegations. Both doctors testified that their counseling sessions with the family revealed that the children have serious issues with lying and that

they lied about the allegations against Jeffrey. Dr. Seiler stated that the children lied with impunity, "They lie when faced with an absolute fact that it could not be correct." While Kristi testified at trial that she did not believe the various allegations of abuse made by the children, she reported them to Drs. Deyoub and Seiler as truth. Dr. Deyoub characterized Kristi's behavior as "sick" and opined that it was psychologically damaging to the children. The effect on the children did not go unnoticed. Jeffrey testified that the children acted differently and distant toward him. Kristi acknowledged that AG suffered from significant anxiety and that he worried often. Kristi's boyfriend, Mr. Bishop, testified that there was fear and anxiousness during visitation exchanges.

In *Swadley v. Krugler*, our court held that the mother's continuous and unfounded sexual-abuse allegations against the father provided sufficient evidence of a material change in circumstances. 67 Ark. App. 297, 303, 999 S.W.2d 209, 213 (1999). In *Sharp v. Keeler*, we held that the mother's continued efforts to alienate the father from the child constituted a material change in circumstances. 99 Ark.App. 42, 55, 256 S.W.3d 528, 537 (2007). In this case, the testimony of Kristi's efforts to alienate her children from their father and the effect her behavior had on her children supports the trial court's findings that a material change in circumstances had occurred and the change in custody was in the children's best interests. *Hudgens v. Martin*, 2009 Ark. App. 462, at 2–3, 2009 WL 1553631 (holding that the mother's barrage of unfounded abuse allegations against her child's father constituted a

**3.** The record includes unsubstantiated allegations that Jeffrey is an alcoholic, that Jeffrey locked the children in his girlfriend's closet for thirty minutes, that Jeffrey spanked RG so many times that his rectum bled, that Jeffrey punched AG in the nose causing it to bleed, that Jeffrey locked the children outside his girlfriend's home and made them sleep all night outside in the cold, and that Jeffrey was exposing the children to pornography and other sexual behavior.

change in circumstances and that it was in the best interests of the child that the father have primary custody). Therefore, we cannot say that the trial court clearly erred in placing the custody of the children with Jeffrey and giving Kristi supervised visitation.

Affirmed.

GLADWIN and MARTIN, JJ., agree.