SLIP OPINION

Cite as 2014 Ark. 537

# SUPREME COURT OF ARKANSAS

No. CV–14–115

| | | |
|---|---|---|
| TINA OLSON | | **Opinion Delivered** December 18, 2014 |
| | APPELLANT | |
| V. | | APPEAL FROM THE POPE COUNTY CIRCUIT COURT [NO. DR–12–380] |
| DON OLSON | | HONORABLE GORDON W. "MACK" MCCAIN, JUDGE |
| | APPELLEE | |
| | | REVERSED AND REMANDED. |

**COURTNEY HUDSON GOODSON, Associate Justice**

Appellant Tina Olson appeals a decree entered by the Pope County Circuit Court granting her amended complaint for divorce on the ground of adultery against appellee Don Olson. For reversal, Tina contends that the circuit court erred (1) by granting the divorce on her amended complaint based on the testimony of Don and his witnesses when she was not present at trial; (2) by dividing the parties' debts and assets pursuant to the divorce or by making an unequal division of marital property; and (3) by dismissing her claim for alimony or by failing to award alimony. We accepted certification of the appeal from the Arkansas Court of Appeals as raising an issue of first impression; therefore, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(b)(1). We reverse and remand on the first point raised on appeal.

Tina initiated this action by filing a complaint for divorce on grounds of general indignities in the Pope County Circuit Court on July 11, 2012. In the complaint, Tina

alleged that the parties had married in February 1987, that they had an adult child but no minor children, and that they had separated on the date that she filed the complaint. She also stated that the parties owned both real and personal property that would be subject to division by the court, and she requested alimony. Tina filed an amended complaint on August 21, 2012, in which she asserted that the parties had entered into a covenant of marriage following the passage of the Covenant of Marriage Act of 2001. In this complaint, she alleged that she was entitled to a divorce on the ground of adultery.

After a hearing, the circuit court entered a temporary order on August 30, 2012, granting Tina temporary possession of the marital home, which the parties had listed for sale, and ordering Don to pay all of the parties' bills, in addition to spousal support of $250 per month. On December 11, 2012, the circuit court amended the temporary order by placing Don in possession of the marital home, as Tina had left the state, and by increasing Tina's spousal support to $400 per month. This order also incorporated a three-page list of personal property that the parties had divided by agreement. On January 14, 2013, Tina filed a motion for contempt alleging that Don was delinquent in his payment of spousal support. On February 5, 2013, Don filed a counterclaim for divorce based on the ground of general indignities. The counterclaim did not mention that the parties had entered into a covenant of marriage.

On July 15, 2013, the circuit court notified the parties by letter that the final divorce hearing would be held on October 2, 2013. On that date, Tina failed to appear for trial. At the outset of the hearing, the circuit court inquired as to whether Don wished to proceed on

his counterclaim for divorce. Don's counsel replied that it would be necessary to amend the counterclaim to allege that the parties had entered into a covenant of marriage and to allege "specific grounds."

In his testimony, Don introduced into evidence an exhibit listing the parties' debts, and he asked that any funds Tina received as a result of a medical–device lawsuit be applied toward the payment of their debts. He also stated that the parties' home had sold at a profit of $57,180 and that he had given Tina $30,000 of the proceeds from the sale. Don also testified that the list of property incorporated into the amended temporary order was intended to settle the division of their personal property. He said that, when Tina moved from the marital home, she had left some of her personal property contained on the list. Don stated that he had placed Tina's property in a storage unit, along with his items of property that did not fit in his new residence, at a cost of $45 per month. He further testified that Tina had taken four clocks and a pocket watch that he had inherited and that was designated as his property in their agreement. He testified as to other items of property that Tina had retained contrary to the parties' settlement agreement, including a blender, a television, a DVD player, an autographed picture of John Daly, and books.

With regard to his retirement accounts, Don stated that he and Tina had been married for twenty-six years and that he had been working for Entergy "much longer than that." He said that he planned to retire the following January, and he expressed the opinion that Tina was entitled to forty percent of his pension, which would amount to approximately $2,000 per month. Don testified that he was not willing to part with any of the funds held in his

401k account.[1]

In addition, Don acknowledged that he and Tina had entered into a covenant of marriage. He stated that they had sought professional counseling just prior to their separation in a sincere effort to resolve their marital difficulties. Don also testified that he had committed adultery. At this juncture in the testimony, the circuit court interjected to ask whether Don was going forward with his counterclaim for divorce on general indignities or whether he was admitting Tina's grounds for divorce. Don's counsel responded that he was moving forward on Don's counterclaim, saying, "I don't think I could prosecute hers necessarily." Counsel added that he was moving orally to amend Don's counterclaim to reflect the ground of adultery "because of the covenant of marriage." The circuit court granted Don's motion to amend his counterclaim to reflect the covenant of marriage and the ground of adultery. Whereupon, Carrie Clayton testified as to that ground.[2] Clayton stated that she had engaged in "a sexual relationship with Mr. Olson subsequent to him being married to Mrs. Olson."

In oral rulings from the bench, the circuit court dismissed Tina's pending motion for contempt and her request for alimony based on her "failure to prosecute" and because she had not requested a continuance. The court granted Don's orally amended counterclaim for divorce on the ground of adultery. The circuit court ordered Tina to return the clocks and

---

[1] At the temporary hearing, Don testified that he deposits $482.60 per month into the 401k account.

[2] Clayton had previously testified that she had known the parties for over thirty years and that the parties had resided in Pope County in Arkansas for over sixty days prior to the filing of the complaint for divorce.

the pocket watch that Don had inherited and pursuant to their agreement. Alternatively, if Tina failed to return this property, the court found that the property was worth $2,000, and the court granted judgment in that amount. As for the items of Tina's personal property that Don had placed in storage, the court found that Tina had abandoned this property and that the value of the property and the storage costs were offset by the items kept by Tina that belonged to Don according to their settlement agreement. The circuit court directed that any proceeds Tina received from the lawsuit were to be applied to the parties' debts and that any remaining debt was to be divided equally. The court awarded Tina forty percent of Don's pension and granted Don's request to retain the entire 401k account.

On October 4, 2013, Don filed a motion pursuant to Rules 59 and 60 of the Arkansas Rules of Civil Procedure to modify the circuit court's oral decision in one respect. Instead of granting him the divorce, he asked the court to award Tina the divorce based on her amended complaint and her ground of adultery. In this motion, Don noted that he had presented evidence both proving and corroborating Tina's grounds for divorce, and he presented as additional evidence the affidavit of Laurie Scallion. In this affidavit, Scallion averred that "Don Olson has told me that within the last fifteen months, he has had a sexual relationship with a girl named Carrie." On October 10, 2013, the circuit court entered its decree in which the court granted Don's posttrial motion and awarded Tina a divorce on the ground of adultery. With that one alteration, the decree incorporated the court's oral rulings made at the hearing. This timely appeal followed.

As her first point on appeal, Tina contends that the circuit court erred in granting her

the divorce when she was not present at the hearing. She argues that she was the real party in interest and that she was the only person who could pursue her claim. In this regard, she asserts that neither Don, who is not a lawyer, nor Don's attorney, because of a conflict of interest, could prosecute her complaint for divorce. Tina asserts that the situation left the circuit court with the options of either continuing the trial to another date, or dismissing her complaint without prejudice pursuant to Rule 41 of the Arkansas Rules of Civil Procedure and allowing Don to proceed with his counterclaim for divorce. With regard to the second option, she points out that Don could not have obtained a divorce on his stated grounds because general indignities is not a ground upon which a covenant of marriage may be dissolved. She also maintains that Don's admission that he committed adultery provides no grounds upon which he could obtain a divorce and that such an admission cannot force a divorce upon a spouse who chooses not to prosecute a claim for divorce. Further, she contends that the evidence failed to establish the ground of adultery because the evidence did not show that Don had committed adultery before she filed the complaint for divorce.

In response, Don contends that Tina's arguments are not preserved for appeal because she did not present them at the hearing or in a posttrial motion. He asserts that Tina's arguments do not call into question the circuit court's subject-matter jurisdiction and that, therefore, the issues she raises cannot be asserted for the first time on appeal. Don also argues that Tina's contentions are without merit because she fully participated in the proceedings leading up to the final hearing, because she repeatedly asked for a divorce, and because she testified as to his adultery at the temporary hearing. He maintains that Tina's "manipulative

SLIP OPINION

defiance" of the circuit court's order setting the hearing and her failure to attend the trial does not diminish the fact that she requested a divorce. He also asserts that the circuit court was presented with ample evidence establishing Tina's claim of adultery.

As an initial matter, we address Don's contention that Tina's claim of error is not preserved for appeal. It is well settled that this court will not consider arguments raised for the first time on appeal. *Millsap v. Williams*, 2014 Ark. 469, ___ S.W.3d ___; *Brown v. Lee*, 2012 Ark. 417, 424 S.W.3d 817. Although this court reviews divorce cases de novo on the record, as we stated in *Jones v. Jones*, 320 Ark. 449, 453, 898 S.W.2d 23, 25 (1995), "De novo review does not mean that this court can entertain new issues on appeal when the opportunity presented itself for them to be raised below, and that opportunity was not seized." Unless a party has no opportunity to object to a ruling of the circuit court, an objection must be made at the time of the ruling, and the objecting party must make known to the court the action desired and the grounds of the objection. *In re Guardianship of S.H.*, 2012 Ark. 245, 409 S.W.3d 307; *Pearrow v. Feagin*, 300 Ark. 274, 778 S.W.2d 941 (1989). Thus, in order for this procedural bar to apply, a party must have had the opportunity to voice an objection to the challenged ruling. In this instance, Tina was not present at the hearing. Therefore, she did not have an opportunity to object. As a result, her failure to raise this question of law at trial is no impediment to her ability to contest the circuit court's decision to grant her complaint for divorce that she did not prosecute. Nor does her failure to file a posttrial motion contesting the court's action preclude our review. Where a party has no notice or an opportunity to object to a circuit court's ruling, a posttrial motion is not necessary to preserve

SLIP OPINION

the point for appellate review. *Ark. Dep't of Human Servs. v. Briley*, 366 Ark. 496, 237 S.W.3d 7 (2006). We also note that the circuit court granted Don's posttrial motion by entering the decree within ten days of Don's filing of the motion. Thus, Tina was not afforded the benefit of having ten days to respond to Don's posttrial motion. *See* Ark. R. Civ. P. 59(d) (where a new-trial motion is supported by affidavits, the opposing party has ten days to respond). Because Tina had no opportunity to question the circuit court's actions, we conclude that Tina may raise this issue on appeal.

We begin with the observation that divorce is a creature of statute and can only be granted when statutory grounds have been proved and corroborated. *Coker v. Coker*, 2012 Ark. 383, 423 S.W.3d 599. This court has held that divorces are not granted upon the uncorroborated testimony of the parties and the adverse party's admission of the truth of the matters alleged as grounds for divorce. *Settles v. Settles*, 210 Ark. 242. 195 S.W.2d 59 (1946). The parties in this case executed a declaration of intent to designate their marriage as a covenant of marriage, which is a form of marriage that is governed by Arkansas Code Annotated sections 11-9-801 to -811 (Repl. 2009). Ark. Code Ann. § 11-9-807. Under these provisions, a covenant of marriage is entered into by couples "who understand and agree that the marriage between them is a lifelong relationship" that is to be severed "only when there has been a complete and total breach of the marital covenant commitment." Ark. Code Ann. § 9-11-803(a)(1) & (2). Parties who have entered into a covenant of marriage, after participating in authorized counseling, may either obtain a judgment of divorce or a judgment of judicial separation, but only on specified grounds that differ between the two actions. *See*

Ark. Code Ann. § 9-11-808(a) & (b). For our purposes here, a spouse to a covenant of marriage may obtain a divorce where "[t]he *other* spouse has committed adultery." Ark. Code Ann. § 11-9-808(a)(1) (emphasis supplied). However, general indignities constitutes grounds only for obtaining a judicial separation. Ark. Code Ann. § 11-9-808(b)(5)(C).

In the case at bar, the circuit court granted Tina a divorce, although she did not attend the trial to prosecute her claim, based solely on testimony offered by Don to prove and to corroborate Tina's ground of adultery. In effect, Don procured a divorce based on Tina's amended complaint when he did not have grounds upon which he could have obtained a divorce, either in his original counterclaim in which he sought a divorce on general indignities or in his orally amended counterclaim alleging the ground of his *own* adultery. We have no hesitation in concluding that the circuit court erred by granting Tina a divorce under these circumstances.

Rule 41 has some bearing on our analysis in light of Tina's failure to appear at trial. This rule provides in pertinent part,

(a) Voluntary Dismissal; Effect Thereof.

(1) Subject to the provisions of Rule 23(e) and Rule 66, an action may be dismissed without prejudice to a future action by the plaintiff before the final submission of the case to the jury, or to the court where the trial is by the court. Although such a dismissal is a matter of right, it is effective only upon entry of a court order dismissing the action.

(2) A voluntary dismissal under paragraph (1) operates as an adjudication on the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based upon or including the same claim, unless all parties agree by written stipulation that such dismissal is without prejudice.

(3) In any case where a set-off or counterclaim has been previously presented, the defendant shall have the right of proceeding on his claim although the plaintiff may have dismissed his action.

(b) Involuntary Dismissal. In any case in which there has been a failure of the plaintiff to comply with these rules or any order of court or in which there has been no action shown on the record for the past 12 months, the court shall cause notice to be mailed to the attorneys of record, and to any party not represented by an attorney, that the case will be dismissed for want of prosecution unless on a stated day application is made, upon a showing of good cause, to continue the case on the court's docket. A dismissal under this subdivision is without prejudice to a future action by the plaintiff unless the action has been previously dismissed, whether voluntarily or involuntarily, in which event such dismissal operates as an adjudication on the merits.

We have held that a plaintiff has an absolute right to take a voluntary nonsuit under Rule 41(a) before the final submission of the case for trial. *Bevans v. Deutsche Bank Nat'l Trust Co.*, 373 Ark. 105, 281 S.W.3d 740 (2008). More to the point, we have applied the involuntary-dismissal provisions of Rule 41(b) when a party fails to appear at a hearing. *Gore v. Heartland Cmty. Bank*, 356 Ark. 665, 158 S.W.3d 123 (2004). We have also observed that a dismissal for the failure to prosecute should ordinarily be without prejudice. *Wolford v. St. Paul Fire & Marine Ins. Co.*, 331 Ark. 426, 961 S.W.2d 743 (1998) (citing *Prof's Adjustment Bureau v. Strong*, 275 Ark. 249, 629 S.W.2d 284 (1982)).

Pursuant to Rule 41(b), the circuit court had the authority to dismiss Tina's amended complaint for failure to prosecute when she did not attend the hearing. Also, the court may have exercised its discretion to continue the case to another date. *See McNutt v. Yates*, 2013 Ark. 427, 430 S.W.3d 91 (observing that continuances lie within the sound discretion of the circuit court). However, we know of no authority that would permit the circuit court to allow Don to proceed with Tina's amended complaint, which she declined to prosecute.

SLIP OPINION

The present situation calls to mind our decision in *Haller v. Haller*, 234 Ark. 984, 356 S.W.2d 9 (1962). There, the wife sued for divorce, and the husband filed a counterclaim for divorce. After hearing the testimony, the chancery court denied the wife's claim for divorce, but the court awarded the divorce to the husband, even though he withdrew his counterclaim prior to the final submission of the case. On appeal, the husband argued that the chancery court erred by granting him a divorce. Applying the provision of our former civil code that corresponds to Rule 41(a),[3] we reversed and said,

> It must be remembered that the policy of the law is to maintain the marriage relationship, rather than to dissolve it. In 27A C.J.S. 'Divorce' § 8, page 27, holdings from the various jurisdictions are cited to sustain this text:
>
>> It is generally recognized that the state or the public has an interest in the marital status, its continuance, and dissolution, but an unwilling party, although legally entitled to a divorce, cannot be compelled to procure a divorce, or to consent to a divorce, either ecclesiastical or civil, and it is always optional with a party who is legally entitled to a divorce whether to exercise the right. Thus, the guilty party in a divorce action has no personal right to insist that a divorce be granted against the wishes of the innocent spouse.

*Haller*, 234 Ark. at 988, 356 S.W.2d at 11–12. We believe that the same reasoning applies here, especially when we consider the unusual circumstance that Don supplied the proof upon which the court granted the divorce to Tina. For whatever reason, Tina did not appear for trial to prosecute her amended complaint for divorce. Don, as the opposing party in the divorce action, could not pursue Tina's claim. Consequently, we hold that the circuit court

---

[3] We interpret Rule 41 in the same manner that we construed the former statute. *Wright v. Eddinger*, 320 Ark. 151, 894 S.W.2d 937 (1995); *Lemon v. Laws*, 305 Ark. 143, 806 S.W.2d 1 (1991).

clearly erred by awarding Tina a divorce. In so holding, we also reverse the circuit court's division of the marital property and debts. When a circuit court errs by granting a decree of divorce, the court's division of property cannot stand. *See Shelton v. Shelton*, 102 Ark. 54, 59, 143 S.W. 110, 112 (1912) (holding that "if appellant is not entitled to a divorce, she is not entitled to a division of the property at all").

The only remaining argument for discussion is Tina's contention that the circuit court erred by dismissing her claim for alimony to the extent that the dismissal was with prejudice or functioned as a ruling on the merits. As we said earlier, a circuit court is authorized to dismiss a claim upon a party's failure to prosecute pursuant to Rule 41(b). *Gore*, *supra*. Such dismissals are ordinarily without prejudice, *Wolford*, *supra*. In the decree, the circuit court did not expressly dismiss the claim with prejudice. Therefore, we construe the court's decree as dismissing the claim for alimony without prejudice. We find no error on this point.

Reversed and remanded.

*Sanford Law Firm, PLLC*, by: *Josh Sanford*, for appellant.

*Dunham & Faught, P.A.*, by: *James Dunham*, for appellee.