Cite as 2024 Ark. App. 90

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-23-62

| | | |
|---|---|---|
| | | **Opinion Delivered** February 14, 2024 |
| JEFFREY PARSONS | | APPEAL FROM THE SALINE |
| | APPELLANT | COUNTY CIRCUIT COURT |
| | | [NO. 63DR–11–1291] |
| V. | | |
| | | HONORABLE ELLEN BRANTLEY, |
| VIRGINIA GRIFFIN | | JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## BRANDON J. HARRISON, Chief Judge

In this one-brief appeal, Jeffrey Parsons appeals the circuit court's order that awarded him four hours of visitation with his son every other weekend. He argues that the circuit court erred in its consideration of the evidence and in allowing certain testimony into evidence. We affirm the circuit court's order.

The parties divorced in May 2012, and their divorce decree incorporated a property-settlement agreement in which they agreed to a joint-custody arrangement of alternate weeks with their five-year-old child (MC). In October 2020, Griffin moved for a modification of the custody arrangement. She alleged that over the past year, Parsons had grown increasingly abusive toward his current spouse, coworkers, and MC; that Parsons has a drinking problem; that he had been physically abusive to his spouse in MC's presence and verbally abusive to MC; and that Parsons had recently been charged with felony domestic abuse. According to Griffin, MC no longer wanted to spend time with Parsons. Griffin

asked that she be awarded sole custody of MC. Parsons answered and generally denied all allegations.

In November 2020, the circuit court held a hearing at which the following testimony was given. Parsons's current wife, Christina Parsons, said that she had been married to Parsons for two years but had recently separated from him and obtained a restraining order. She stated that Parsons has anger issues and is very abusive. In one instance in August 2020, she and Parsons had argued, and he had thrown her to the ground, hit her on the back of her head, smashed a television and picture frames, and thrown her clothes onto the floor. In March 2020, he pressured her to have an abortion and threatened to "cut [her] abdomen open with a box cutter" and to kill her parents. She said MC witnessed some verbal abuse but not any physical abuse. She also said that Parsons was often not there on the weeks that MC stayed at their home.

Griffin testified that Parsons had been abusive toward her in their relationship, that he had been abusive in other relationships, and that MC had "lived through this long enough." She said it was not safe for him to be with Parsons, and MC did not want to be with Parsons. MC acted very nervous at the mention of seeing his dad.

Thirteen-year-old MC testified that his relationship with his dad was "fine," but he did not want to see his dad at the moment "[b]ecause he cheated on Christina." MC said his dad did not spend time with him and that he was upset with his dad. His dad and Christina had loud arguments, and his dad called Christina names.

Parsons testified and denied ever being physically abusive to Griffin or Christina or threatening to kill Christina's parents. He expressed concern that MC was being told

2

"gibberish" about him. He agreed that he had been terminated from his job as a police officer because of the domestic-battery allegations.

After the hearing, the circuit court entered a temporary order granting Griffin's motion for a change of custody. Parsons was allowed one and a half hours of supervised visitation every Sunday afternoon to occur at his parents' house with his father present. The court ordered the parties and their families not to discuss the custody case, Parsons's pending criminal case, or any other pending litigation with MC.

In June 2021, Parsons moved to modify visitation and asserted that MC had requested more time with him. Parsons specifically argued that MC "is 14 years of age and is of sufficient maturity that his desires be considered." Parsons requested a full day of visitation on 3 July 2021 so that MC could attend a family gathering; he also requested that the current order be modified so he has additional unsupervised visitation. Griffin denied that MC wanted additional visitation and asked that the current order stand.

It does not appear that the court ever ruled on Parsons's motion. The court convened a hearing on 10 October 2022, at which Shea Wood testified that she had been MC's counselor for the last six weeks. MC had expressed to her that he wanted to speak for himself, that he did not feel like he had that opportunity at the last hearing, and that he did not want to have visitation with his dad. Wood did not feel that MC had been pressured by outside influences because he has "a lot of thoughts and a lot of opinions from his own place." On cross-examination, Wood said that she was familiar with the term "parental alienation" but that it was not her area of expertise.

Fifteen-year-old MC testified,

> I want the visitation at the bare minimum or to nothing so I can just live out the rest of my two years as a kid under the roof of my parents' house peacefully. And I do not think my father is a good influence on me because he is a racist raging drunk that likes laying his hands on women. And anytime I'm over there, I normally am just staying by myself. And the only time I ever saw him really was when he picked me up and took me to school in the mornings. And any other time that I did see him from that, he was drinking and had a friend over that also was drinking with him.

MC said that during their supervised visitation, they "sit on the couch and watch TV and do nothing." His dad's girlfriend is sometimes there, and he (MC) does not care for her and would rather not see her. MC stated that his dad sometimes said terrible things during visitation, such as calling Griffin "trailer park trash." He denied that his mother had tried to influence him or keep him away from his dad: "[E]very time the issues come up, she says to choose what I want to do. And if I want to see my dad, Jeff Parsons, then I can do that. This is my own decision." He acknowledged that his mother had told him that Parsons had pled guilty and is on probation.

Parsons testified that he had recently been convicted of third-degree battery, assault, terroristic threatening, and interference with an emergency communication device and that these convictions stemmed from an altercation with Christina Parsons. Parsons said that MC always gives him a "huge hug" when he arrives for visitation. They discuss school and MC's other interests, including working out and getting his driver's permit. Parsons stated that he wanted nothing more than to see his son and that if MC did not want to see him, then he "would be more than willing to go to counseling with him" to address it. Before the 2020 incident with Christina, Parsons said, he and MC had been "best friends." He denied having a drinking problem and claimed he could not drink alcohol without getting sick because his gall bladder had been removed years ago. He asked the court to restore the

4

joint-custody arrangement.

In its written order, the circuit court modified Parsons's visitation to every other weekend for no more than four hours; specifically, 1:00 p.m. to 5:00 p.m. on Saturday afternoon unless the parties agree otherwise. Supervised visitation was no longer required. The order also allowed Parsons to arrange to participate in counseling with MC under Wood's direction and stated visitation may be increased on Wood's recommendation. Parsons timely appealed the circuit court's order.

Our standard of review following a bench trial is whether the circuit court's findings are clearly erroneous. *Simmons v. Dixon*, 96 Ark. App. 260, 240 S.W.3d 608 (2006). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* Disputed facts and determinations of credibility are within the province of the fact-finder. *Id.*

For his first point, Parsons argues that the circuit court erred in allowing Shea Wood to testify. Five days before the October 10 hearing, Parsons moved to strike Shea Wood as a witness. The motion indicated that Wood was not listed as a possible witness in discovery responses provided in January 2021; that Parsons had no notice that Wood would be called as a witness until 4 October 2022; that he was not aware that MC was in counseling until October 4; and that he had not had an opportunity to review Wood's credentials or her counseling records for MC. He alleged that allowing Wood to testify or allowing the counseling records to be admitted would result in unfair prejudice to him and would violate Ark. R. Civ. P. 26(e). He also argued that the case had been pending for two years, so a

5

continuance was not appropriate nor was it in MC's best interest.

In response, Griffin's counsel explained that she did not know MC was in counseling until late September 2022 and that as soon as Wood confirmed that she had relevant testimony and was available for the hearing, a subpoena was issued and provided to Parsons's attorney. Wood confirmed her availability on the afternoon of October 3, and Parsons's attorney was notified on October 4. In addition, the two-year delay between the issuance of the temporary order in this case and the setting of the final hearing was necessary for Parsons to resolve his own criminal matters, not through any fault of Griffin, and she did not oppose a continuance. Griffin argued that Wood's testimony was necessary and helpful to the court in determining MC's best interest.

The court received arguments on Parsons's motion prior to receiving testimony at the October 10 hearing.[1] The circuit court acknowledged that Parsons was given short notice but allowed Wood to testify because it believed her testimony would be useful to the court and would perhaps reduce the amount of time that MC had to testify.

We review the circuit court's decision to exclude or permit the testimony of any witness at trial under an abuse-of-discretion standard. *Steele v. Lyon*, 2015 Ark. App. 251, 460 S.W.3d 827. A circuit court has broad discretion in matters pertaining to discovery, and that discretion will not be second-guessed by the appellate court absent an abuse of discretion that is prejudicial to the appealing party. *Johnson v. Bennett*, 2016 Ark. App. 24, 480 S.W.3d 870. According to Ark. R. Civ. P. 26(e)(1) (2023), a party is under a duty to

---

[1]The transcript indicates that the circuit court had already denied the motion off the record but allowed counsel to make a record.

supplement a discovery response with "the identity and location of each person expected to be called as a witness at trial" and "the subject matter and substance of any expert witness's testimony."

Parsons asserts that there is no dispute that the intention to call Woods as a witness was not timely disclosed in discovery and was provided only six days before the final hearing. He further notes that he had been exercising restricted visitation for the last two years while awaiting a final hearing. In making its ruling, the circuit court found that it would consider granting Parsons additional visitation when and if the counselor recommended it. Therefore, Parsons contends, "it is clear that Appellant was prejudiced by allowing the counselor to testify when she was not timely listed as a witness in discovery."

We hold that the circuit court did abuse its discretion in allowing Wood to testify under these circumstances. Nevertheless, we affirm because Parsons has failed to demonstrate that he was prejudiced by the circuit court's decision. He argues, "The Counselor testified[,] and the Appellant's visitation remained almost as restricted as it was under the temporary order." This argument requires us to presume prejudice, which we will not do. *See McNutt v. Yates*, 2013 Ark. 427, 430 S.W.3d 91 (appellate court does not presume bias or prejudice).

Next, Parsons asserts that the circuit court erred in not considering the effect of domestic violence on the best interest of the child as required by Ark. Code Ann. § 9-13-101(c) (Supp. 2023), which provides:

> (1) If a party to an action concerning custody of or a right to visitation with a child has committed an act of domestic violence against the party making the allegation or a family or household member of either party and such allegations are proven by a preponderance of the evidence, the circuit

7

court must consider the effect of such domestic violence upon the best interests of the child, whether or not the child was physically injured or personally witnessed the abuse, together with such facts and circumstances as the circuit court deems relevant in making a directive pursuant to this section.

(2) There is a rebuttable presumption that it is not in the best interest of the child to be placed in the custody of an abusive parent in cases in which there is a finding by a preponderance of the evidence that the parent has engaged in a pattern of domestic abuse.

Parsons asserts that there was no evidence that he had engaged in a "pattern of domestic abuse," nor was there evidence that MC had been physically injured or witnessed any act of domestic abuse by his father. Yet neither of the circuit court's rulings after the November 2020 or October 2022 hearings demonstrated that the circuit court had considered this lack of evidence. Therefore, he argues, the circuit court "erred in ordering such a restricted visitation schedule." We need not address this argument, however, because Parsons failed to raise any argument based on section 9-13-101(c) below, and it is well settled that this court will not consider arguments raised for the first time on appeal. *Olson v. Olson*, 2014 Ark. 537, 453 S.W.3d 128.

For his third point, Parsons contends that the circuit court erred in allowing MC's wishes to dictate the court's best-interest determination while disregarding other important factors. Parsons explains that in custody and visitation matters, the primary consideration is always the best interest of the child, and important factors to consider in determining reasonable visitation are the wishes of the child, the capacity of the party desiring visitation to supervise and care for the child, problems of transportation and prior conduct in abusing visitation, the work schedule or stability of the parties, and the relationship with siblings and other relatives. *Maley v. Cauley*, 2010 Ark. App. 850, 378 S.W.3d 808. Visitation is left to

the sound discretion of the circuit court.  *Id.*

In this case, Parsons asserts, there was no evidence presented that he lacked the capacity to care for and supervise MC, that there were issues with transportation or abusing visitation in the past, that his work schedule would be a problem, or that he would be unable to provide stability to MC.  Parsons contends that "[i]t is clear from the record that the circuit court allowed the minor child's preference to not exercise visitation" to dictate its decision instead of considering these other factors.  However, Parsons did not make any argument based on these best-interest factors below, and again, this court will not consider arguments raised for the first time on appeal.  *Olson*, *supra*.

Fourth, Parsons argues that the circuit court erred in not properly considering Griffin's "successful" attempts to alienate MC from Parsons.  Parsons contends that the evidence of Griffin's attempts to alienate MC from him include the following: not informing him that MC was in counseling, refusing to deviate from the visitation schedule in the temporary order, describing him as "abusive" in front of MC, discussing both the criminal case and the custody case in front of MC, and telling MC that he had cheated on Christina.  Parsons asserts that at both hearings, MC could testify only to things that he had been told by his mother.  Parsons also argues that none of these issues had existed before the criminal charges arose in 2020 and that, prior to that time, he and MC had been best friends.

The circuit court's remarks make clear that Griffin's influence was taken into consideration:

> I do think the mother has had a lot of influence on the child whether intentionally or not, you know, the child knows a lot about his father's legal problems.  I would prefer that he didn't, but on the other hand, I think it's kind of inevitable in the way that he would. . . . I mean the real question is

9

what's best for the child going forward.

. . . .

> I basically don't believe that the mother has poisoned the child's mind. Now, she has talked, and I don't think there's any doubt that she got involved perhaps overinvolved with Christina's cases probably because she felt like she had not been able to bring forth what she believed happened to her in her marriage, and this was an opportunity to see him punished for actions that she thought were similar perhaps. . . . Again, way too much of this has been talked about around the child, but on the other hand, as was pointed out the child was subpoenaed as a witness in a domestic abuse case. It wasn't all her.

What Parsons is arguing is that the circuit court erred in weighing the evidence and that this court should reweigh the evidence in his favor. However, it is within the circuit court's discretion to determine the credibility of witnesses and the weight to be given their testimony, and the appellate courts give due deference to those determinations. *Janjam v. Rajeshwari*, 2020 Ark. App. 448, 611 S.W.3d 202.

Finally, Parsons argues that the circuit court erred in not considering joint custody pursuant to Ark. Code Ann. § 9-13-101(b)(1)(A)(i) (Supp. 2023), which provides that when in the best interest of a child, custody shall be awarded in such a way so as to assure the frequent and continuing contact of the child with both parents. Subdivision (ii) provides that the circuit court shall consider awarding joint custody of a child to the parents in making an order for custody.

In its remarks at the October 2022 hearing, the circuit court stated,

> I certainly think that I would not be looking to expand [MC's] visitation with the father. I mean, you know, I told him that I was going to listen to him and see what he wanted to do, and for me to say well, I listened to you. I mean, you know, he's fifteen years old. I don't have to do what he wants. But on the other hand, he's of an age where I think it would be unwise for me not to take his opinion into consideration. So, I mean we're not going back to fifty/fifty, and let me say that, you know, unlike a lot of other people,

I don't necessarily think that equal sharing of time always works. Sometimes it does and sometimes it doesn't.

. . . .

At this stage, I could give the father a lot more visitation, I am willing to do so only when and if I think that would be worthwhile for the child. The child felt like he didn't have his viewpoint fully considered the last time even though I felt like the restrictions I put on the father were pretty severe.

I am going to at this point change visitation to every other Saturday, but it may be for up to four hours. When and if the counselor recommends that visitation can be extended either to overnight or more frequently, I will consider it. I mean as I say, in the long run, it will be better for this child in so many ways if he can have a good relationship with both of his parents. But right now, as everybody heard, I just don't think that's in the cards.

Parsons argues that the circuit court's comments make clear "that equal parenting time was off the table." He also states, "The court's ruling that it could give the father more visitation shows that the court was not considering joint custody." He contends that the circuit court considered only whether to alter the visitation restrictions and did not consider allowing the parties to return to joint custody as required by statute, thereby committing reversible error. We disagree with Parsons's contention; the circuit court's remarks show that it considered and rejected a return to 50/50 parenting time because it did not believe such an arrangement would be in MC's best interest.

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*Digby Law Firm*, by: *Bobby R. Digby II*, for appellant.

One brief only.